BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
CARLOTTA WELLS
Assistant Branch Director, Federal Programs Branch, Civil Division
LISA ZEIDNER MARCUS (N.Y. Bar 4461679)
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, 7th Floor
Washington, D.C. 20530
Telephone: (202) 514-3336
Facsimile: (202) 616-8470
lisa.marcus@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| PATRICIA JORDAN,<br><br>      Plaintiff,<br><br>  v.<br><br>THE PRESIDIO TRUST, and THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>      Defendants. | CASE NO. 16-CV-02122 KAW<br><br>**Defendants' Motion To Dismiss Pursuant to Rules 12(B)(1) and 12(B)(6) of the Federal Rules Of Civil Procedure**<br><br>**Noticed Hearing:**<br>Date:    December 1, 2016<br>Time:    11:00 AM<br>Judge:  Hon. Kandis A. Westmore |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................III

NOTICE OF MOTION AND MOTION TO DISMISS .......................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

INTRODUCTION ............................................................................................................. 2

BACKGROUND: THE PRESIDIO TRUST AND ITS ENABLING STATUTE ........................... 5

STATEMENT OF RELEVANT FACTS ............................................................................. 7

ARGUMENT ................................................................................................................... 9

I. The Court Lacks Subject Matter Jurisdiction To Hear This Case ................................. 10

   A. Plaintiff Does Not Identify an Applicable Waiver of Sovereign Immunity ..................10

   B. No Statutory Authority Vests The District Court With Subject Matter Jurisdiction ......12

      1. The federal question statute, 28 U.S.C. § 1331, does not vest the Court
         with subject matter jurisdiction here. .............................................................13

      2. The jurisdictional statute for civil rights and elective franchise does not
         confer subject matter jurisdiction for Jordan's purported claims. ...........................15

      3. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not
         provide subject matter jurisdiction ....................................................................15

   C. Because Plaintiff Has Not Suffered An Injury-In-Fact, She Does Not Establish
      Constitutional Standing To Pursue Her Purported Claim ...............................16

      1. The Court need not accept the Complaint's representations of how the
         Trust's EEO Procedures operate. .......................................................................17

      2. Jordan's Complaint fails to establish concrete harm. ..............................18

II. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted ........................... 20

   A. The Declaratory Judgment Act Does Not Provide A Cause Of Action, Only A
      Form Of Relief ...........................................................................................20

   B. Plaintiff Does Not Plead Any Claims Other Than Her Purported Declaratory
      Judgment Act Claim ....................................................................................20

   C. A Plain Reading Of Trust Act Does Not Support Plaintiff's Interpretation .................21

III. An Additional Basis Exists To Dismiss EEOC From The Lawsuit: Plaintiff Purports To
    Join EEOC Pursuant To Rule 19 Of The Federal Rules Of Civil Procedure, But Just
    Adjudication Does Not Require EEOC's Presence .................................................... 23

CONCLUSION ................................................................................................. 25

1

## **TABLE OF AUTHORITIES**

2

3

### CASES

4

*Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008 (9th Cir. 2007) .............................. 10, 12

*Brazil v. Office of Personnel Management*, 35 F. Supp. 3d 1101 (N.D. Ca. 2014)..................... 11

*Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955 (N.D. Ca. 2015).......................................... 20

*Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010).......... 7, 17

*Chadd v. United States*, 794 F.3d 1104 (9th Cir. 2015) ............................................................... 10

*City of Arcadia v. U.S. Environmental Protection Agency*, 265 F. Supp. 2d 1142  (N.D. Ca. 2003)............................................................................................................................. 17

*Clapper v. Amnesty Internernational USA*, 133 S. Ct. 1138 (2013)............................................ 20

*Cour v. Life360, Inc.*, No. 16-cv-805, 2016 WL 4039279 (N.D. Ca. July 28, 2016) ................... 17

*E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005)........................................ 24

*Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471 (1994) ................................................ 12

*Franchise Tax Board. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983).............................................................................................................................................. 13

*Hajro v. U.S. Citizenship and Immigration Services*, 811 F.3d 1086 (9th Cir. 2016)............ 10, 11

*Hughes v. United States*, 953 F.2d 531 (9th Cir. 1992) ................................................................. 11

*In re LDK Solar Securities Litigation*, 584 F. Supp. 2d 1230 (N.D. Ca. 2008)............................ 17

*Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033 (9th Cir. 2003).............. 14, 15

*Munns v. Kerry*, 782 F.3d 402 (9th Cir. 2015) .............................................................................. 16

*Presidio Historical Association v. Presidio Trust*, 811 F.3d 1154 (9th Cir. 2016) ........................ 6

*Raines v. Byrd*, 521 U.S. 811 (1997) ............................................................................................. 16

*Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817 (9th Cir. 2002)................ 16

*Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) .......................................................... 23

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................................ 17

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th Cir. 1989)................................................................................................................................................ 16

*U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743  (9th Cir. 1993) ........................................ 16

*United States v. Tulare Lake Canal Co.*, 535 F.2d 1093 (9th Cir. 1976) .................................... 18

*Vasquez v. Los Angeles County, 487 F.3d 1246, 1249 (9th Cir. 2007)* .................................... 7, 17

*Wishnev v. Northwestern Mutual Life Insurance Co.*, 162 F. Supp. 3d 930, 952 (N.D. Ca. 2016). ..................................................................................................... 3, 13, 20

**STATUTES**

28 U.S.C. § 1343 ...................................................................................... 11, 12, 15

Pub. L. No. 92-589, 86 Stat 1299 (1972) ...................................................................... 5

**OTHER AUTHORITIES**

*Applicability of Anti-Discrimination Statutes to the Presidio Trust*, 28 Op. O.L.C. 84 (2004) ................................................................................................. 14, 15

Donald J. Hellmann, *The Path of the Presidio Trust Legislation*, 28 GOLDEN GATE U. L. REV. 319 (1998) ........................................................................................ 5

H.R. REP. NO. 112-589 (2012) ............................................................................... 6

U.S. Government Accountability Office, 3 *Principles of Federal Appropriations Law*, ch. 15, pt. B, § 2 (3d ed. 2008) ................................................................................ 5

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................. passim

Fed. R. Civ. P. 12(b)(6) ................................................................................. passim

**TREATISES**

13D Wright & Miller § 3566 ............................................................................. 13, 14

14 Wright & Miller § 3655 ................................................................................. 16

6A Wright & Miller § 3562 ................................................................................. 12

**REGULATIONS**

29 C.F.R. § 1614.105 ..................................................................................... 8, 18

29 C.F.R. § 1614.106 ........................................................................................ 8

29 C.F.R. § 1614.108 ....................................................................................... 18

29 C.F.R. § 1614.501 ..................................................................................... 19, 20

29 C.F.R. Part 1601 ......................................................................................... 8

29 C.F.R. Part 1614........................................................................................... 2, 8, 18

29 C.F.R. Part 1629................................................................................................... 8

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 1, 2016 at 11:00 AM, defendants the Presidio Trust (the "Trust") and the Equal Employment Opportunity Commission ("EEOC") will and hereby do move to dismiss plaintiff Patricia Jordan's Complaint (the "Complaint"). Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; defendants set forth the grounds for relief in the accompanying Memorandum of Points and Authorities, below. The Court may also consider all pleadings on file in this matter, any response filed by plaintiff or reply by defendants, and such other matters as may be presented to the Court at the time of the hearing or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court possesses subject matter jurisdiction to hear this case, inasmuch as plaintiff has not established:

   a. Any waiver of sovereign immunity;

   b. Any statutory authority vesting the Court with subject matter jurisdiction; or

   c. An injury-in-fact, and therefore has not established standing.

2. Whether plaintiff has stated a claim upon which relief can be granted where the Complaint's only asserted "cause of action" is one for "declaratory relief" pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and whether the Declaratory Judgment Act allows the "claim" that plaintiff attempts to advance.

3. Only if the Court finds both (i) that it possesses subject matter jurisdiction and (ii) that plaintiff properly relies on the Declaratory Judgment Act, need it consider whether the statute establishing the Trust — the Omnibus Parks and Public Lands Management Act of 1996, Pub. L. No. 104-333, div. I, tit. I, §§ 101-106, 110 Stat. 4093, 4097-4105 (*reprinted as amended at* 16 U.S.C. § 460bb note) (the "Trust Act") — exempts the Trust from otherwise applicable laws and procedures relating to federal-employee claims of unlawful discrimination or termination, allowing the Trust to establish Trust-specific Equal Employment Opportunity ("EEO") procedures for processing and reviewing Trust employees' claims of unlawful

discrimination and termination, or whether Trust employees seeking to bring such claims may instead utilize the procedures provided by the EEOC's federal-sector regulations.

4.    Whether an additional basis exists to dismiss defendant EEOC from this action; specifically, where Jordan has stated that she "has no direct cause of action against the EEOC," Compl. ¶ 23-2, whether she has shown that EEOC should nonetheless be included as a defendant in this action pursuant to the "required joinder" provisions of Rule 19 of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Plaintiff Patricia Jordan's Complaint in effect seeks from this Court an advisory opinion interpreting the legislative charter of defendant the Presidio Trust (the "Trust"), a wholly-owned government corporation established by Congress in 1996. Jordan, a former Trust employee, previously filed an administrative claim through the Trust's Equal Employment Opportunity ("EEO") process. Compl. ¶ 54. In that administrative claim, Jordan alleges she was wrongfully terminated by the Trust on the basis of her age and gender. *See id.* ¶ 5. Her administrative claim remains pending. *Id.* ¶ 17-2. Plaintiff's administrative claim has progressed to the point that Jordan "may [now] request [Alternative Dispute Resolution] ADR and/or a Final Agency Decision by submitting a written request to the Trust's EEO Office." Compl. Ex. 2 at 8 (copy of the Trust's EEO Procedures). But Jordan disfavors the Trust's EEO Procedures. She would prefer processes generally available to federal employees under the regulations of the Equal Employment Opportunity Commission ("EEOC"). *See* 29 C.F.R. Part 1614. Accordingly, she requests that the Court issue a "declaration that the Trust Procedures are invalid or otherwise have no mandatory application against her claims." Compl. ¶ 11.

Plaintiff's Complaint suffers from multiple jurisdictional defects, each of which on its own provides a basis for the Court to grant defendants' Rule 12(b)(1) motion. No waiver of sovereign immunity allows Jordan to maintain her purported claim against the federal defendants. Nor does any statutory authority vest the district court with subject matter jurisdiction here. Further, Jordan lacks standing to pursue her purported claim for declaratory relief. Her Complaint does not allege an injury-in-fact sufficient for standing; instead, it

hypothesizes about the relative merits of the EEOC's process for most federal employees, as compared to the Trust's EEO procedures. Jordan speculates that she would be better off pursuing a termination claim under the "general body of law governing equal opportunity in federal employment," *id.* ¶ 5, rather than under the particular procedures available to Trust employees, *see, e.g.*, *id.* ¶ 7. Despite plaintiff's pronouncements to the contrary, no case or controversy exists to allow the Court to opine on the meaning of the Trust's enabling statute.

Jordan fails to state a claim upon which relief can be granted, and it would also be appropriate for the Court to grant defendants' motion to dismiss pursuant to Rule 12(b)(6). The only "cause of action" that Jordan's Complaint attempts to advance is one for "declaratory relief" pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. *Id.* ¶¶ 16, 55-62. But "[d]eclaratory relief is not an independent cause of action or theory of recovery, only a remedy." *Wishnev v. Northwestern Mutual Life Ins. Co.*, 162 F. Supp. 3d 930, 952 (N.D. Ca. 2016). The Declaratory Judgment Act does not provide Jordan a vehicle for obtaining the advisory opinion she seeks.

The Court should dismiss the claims against both defendants — the Trust and the EEOC — for the reasons stated above and discussed further below. Additionally, another basis exists for dismissing EEOC as a defendant: Jordan improperly attempts to rely on the "required joinder" provision of Rule 19 of the Federal Rules of Civil Procedure to include EEOC as a defendant. *See* Compl. ¶ 23-2. The Court lacks "subject-matter jurisdiction" over the EEOC, and the EEOC's presence in this lawsuit is not necessary to resolve the question(s) that Jordan attempts to raise regarding the Trust's authority. *Cf.* Fed. R. Civ. P. 19(a). Therefore, EEOC is not a "required party," *cf. id.*, and Jordan may not properly use Rule 19 to include EEOC as a defendant, *see id.*

Finally, because Jordan neither establishes this Court's subject matter jurisdiction over either of the defendants, nor shows that she can bring a claim for declaratory relief, the Court should dismiss the Complaint without reaching the question for which Jordan requests a declaration. Were the Court to reach that question, the Court should nonetheless dismiss the Complaint for failure to state a claim for which relief can be granted, and decline to issue the

1    requested judgment. Jordan's Complaint asks the Court for a declaration that the Trust Act does

2    not authorize the Trust to use Trust-specific EEO procedures to adjudicate claims of unlawful

3    termination, and instead that Trust employees may utilize the more common EEOC provisions

4    available to most federal employees. Jordan asserts an interpretation of the Trust's enabling

5    statute at odds with the plain language of that statute. She alleges that Congress could not

6    "possibly" have intended to exempt the Trust from laws otherwise applicable to federal-

7    employment discrimination and termination decisions, Compl. ¶ 10, contending that Congress's

8    passage of the relevant statutory provision by "simple consensus vote," "without material

9    committee hearings or floor debate," somehow makes the provision less authoritative, *id.* ¶ 10.

10       Jordan requests the Court to declare that she may disregard the Trust-specific EEO

11   procedures when pursuing her termination claim against the Trust. *See id.* ¶ 11. Her Complaint

12   repeatedly invokes (and stresses) the "normal," "ordinary," "generally applicable," EEO

13   processes for federal employees, contending that such "normal" processes should apply to

14   termination claims against the Trust.[1] But the Trust is neither "normal" nor "ordinary," and its

15   enabling statute plainly evinces Congressional intent to exempt the Trust from otherwise

16   applicable laws relating to federal appointment, compensation, and termination. Like many other

17   government corporations, the Trust possesses unique characteristics due to the particular

18   decisions made by Congress and reflected in its enabling statute. Indeed, the Trust's *abnormality*

19   and *unusual* processes are what make the Trust a "typical" government corporation. "Virtually

20   all [federal government corporations] are unique creatures, and… what is distinctive about them

21   as a group is that each embodies its own calculated mixture of public and private elements and of

22   financing and controls, and each is a result of a particular congressional enactment after

23   _____

24       [1] *See, e.g.*, Compl. ¶ 5 (describing "normal application of civil rights statutes and EEOC regulations"); *id.* ¶ 7 (referencing the "normal rights and remedies found in the civil rights

25   statutes and EEOC regulations"); *id.* ¶ 11 (explaining that Jordan "seeks a declaration that … the Trust is … subject to ordinary application of the Civil Rights statutes and regulations," and

26   asserting "that because Jordan has now exhausted the *normal* EEO process, she should now be free to pursue *those* rights and remedies …") (emphasis added); *id.* ¶ 46-1 (referring to "the

27   normal EEOC process"); *id.* at 16 ¶ A-2 (stating that "the ADEA and the EEOC Regulations that are generally applicable to termination claims made against federal agencies" should apply also

28   to termination claims made against the Trust); *id.* at 16 ¶ A-3 (same).

1   extensive controversy over rival policies and interests." U.S. Gov't Accountability Office, 3

2   *Principles of Federal Appropriations Law*, ch. 15, pt. B, § 2 (3d ed. 2008), *available at*

3   http://www.gao.gov/legal/red-book/overview (internal quotation and citation omitted).

4   　　　Accordingly, and as discussed further below, the Court should dismiss Jordan's

5   Complaint.

6   　　　**BACKGROUND: THE PRESIDIO TRUST AND ITS ENABLING STATUTE**

7   　　　In 1996, Congress established the Trust as a wholly-owned government corporation to

8   manage, preserve, and protect (in partnership with the National Park Service) the Presidio of San

9   Francisco (the "Presidio").[2] The Presidio, part of the Golden Gate National Recreation area,[3] was

10  a former military installation selected for closure in 1988 by the Defense Secretary's

11  Commission on Base Realignment and Closure.[4] *See generally* Donald J. Hellmann, *The Path of*

12  *the Presidio Trust Legislation*, 28 GOLDEN GATE U. L. REV. 319, 325 (1998) (discussing the

13  history of the Presidio, the public debate preceding the formation of the Trust, and the legislative

14  history of the Trust Act). After years of planning and public debate regarding future use and

15  management of the Presidio, Congress enacted the legislation establishing the Trust (*e.g.*, the

16  Trust Act). *See id.* at 319; *see also* Trust Act, Pub. L. No. 104-333, div. I, tit. I.[5]

17  　　　Through creation of the Trust, Congress sought both to "preserv[e] the historic and

18  natural character of the Presidio" and to "mak[e] the Presidio financially self-sustaining,"

19

20  　　　[2] *See* Trust Act § 103(c)(10)(A) ("The Trust shall be treated as a wholly owned Government
21  corporation subject to chapter 91 of title 31, United States Code (commonly referred to as the
    Government Corporation Control Act).").

22  　　　[3] *See* Pub. L. No. 92-589, 86 Stat 1299 (1972) (establishing the Golden Gate National
23  Recreation area).

24  　　　[4] The base closure procedures were provided by the Defense Authorization Amendments and
    Base Closure and Realignment Act, Pub. L. No. 100-526, tit. II, 102 Stat. 2623, 2627-34 (1988).
25  The Presidio had served as the oldest continuously operated military post in the United States,
    dating from 1776. [cite] It had been designated a National Historic Landmark in 1962, and was
26  part of the Golden Gate National Recreation area because it possessed "significant natural,
    historic, scenic, cultural, and recreational resources." [cite]

27  　　　[5] Congress amended the Trust Act in 1997, 1999, 2000, and 2001. Appendix A to this motion
    includes a copy of Trust Act, as amended, based on the current and historical versions of the Act
28  available at http://www.presidio.gov/presidio-trust/planning/presidio-trust-act.

*Presidio Historical Ass'n v. Presidio Trust*, 811 F.3d 1154, 1157 (9th Cir. 2016) (citing Trust Act § 101), by leveraging an "innovative public/private partnership that minimizes cost to the United States Treasury and makes efficient use of private sector resources," Trust Act § 101(7). *See also* Trust Act § 104(c) ("The Trust['s] … comprehensive program for management of [the Presidio] … shall be designed to reduce expenditures … and increase revenues to the Federal Government to the maximum extent possible."). Congress mandated that the Trust achieve financial self-sustainability within fifteen years after the first meeting of the Board of Directors of the Trust. *See id.* §§ 105(b) (directing the phase-out of federally appropriated funding); 104(o) (requiring that all property under the Trust's management would revert to the General Services Administration for disposal if the Trust did not achieve financial self-sufficiency by the end of fifteen years).[6]

The Trust Act includes several provisions exempting the Trust from certain laws otherwise applicable to federal agencies.[7] Most relevant for purposes of this case, the Trust Act authorizes the Trust, "[n]otwithstanding any other provision of law," to make decisions regarding employee appointment, compensation, and termination. Trust Act § 103(c)(7). The original version of the Trust Act, enacted in 1996, included a narrower version of this provision, authorizing the Trust to make appointment and compensation decisions, without regard to (a) "the provisions of title 5, United States Code, governing appointments in the competitive service," or (b) "the provisions of chapter 51, and subchapter III of chapter 53, title 5, United States Code, relating to classification and General Schedule pay rates." *See* App. A at § 103(c)(7)

---

[6] The Trust achieved financial self-sustainability, on schedule, by 2013. *See* H.R. REP. NO. 112-589, at 94 (2012) (Rep. of Comm. on Appropriations) (explaining that no funding was proposed for the Trust for fiscal year 2013 because the Trust's "self-sufficiency plan stipulated that the Presidio Trust receive Federal appropriations through fiscal year 2012, at which time the Trust would become responsible for funding the operations and maintenance of the Presidio in perpetuity"). Federally appropriated funds for "fiscal year 2012 fulfilled the commitment made by Congress to support the transition of the Presidio Army Base to a mixed-use, financially independent facility by the year 2013 as authorized by Public Law 104–333." *Id.*

[7] For example, §104(b) of the Trust Act states: "Federal laws and regulations governing procurement by Federal agencies shall not apply to the Trust, with the exception of laws and regulations related to Federal government contracts governing working conditions and wage rates." Exemptions from other laws are included in § 102(a), § 102(d)(1), § 102(d)(2), § 104(g), and, as discussed more below, § 103(c)(7).

(redline showing amendments). Congress amended the Trust Act in 1997, broadening this exemption to include termination decisions, and also expanding the scope of the exemption to cover "any other provision of law." *See id.* As amended, § 103(c)(7) of the Trust Act reads as follows:

> Notwithstanding any other provisions of law, the Trust is authorized to appoint and fix the compensation and duties and terminate the services of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, or other laws related to the appointment, compensation or termination of Federal employees.

*See id.*

Pursuant to the authority provided by § 103(c)(7), the Trust has established its own employment policies and procedures, including the Presidio Trust Procedures Related to Claims of Workplace Discrimination (hereinafter "Trust's EEO Procedures") appended to the Complaint. *See* Compl. Ex 2 (copy of Trust procedures).

## STATEMENT OF RELEVANT FACTS

For purposes of defendants' motion to dismiss, the facts alleged in plaintiffs' Complaint are accepted as true.[8] The following facts are relevant to the instant motion.

Plaintiff Patricia Jordan worked as an employee of the Presidio from December 2, 2013 to August 2, 2014. Compl. ¶¶ 32, 33. Jordan served as an executive assistant in the Trust's Office of the Executive Director of the External Affairs Division.[9] *Id.* ¶¶ 30, 34. In that position she performed tasks for the Director of External Affairs and other members of the External Affairs Staff. *Id.* ¶¶ 37-10, 37-7. On July 2, 2014, the Trust's Human Resources Director gave Jordan oral notice that she was being terminated from her position, and her last day was that day (July 2, 2014). *Id.* ¶¶ 42, 42-5. He provided Jordan with a Notification of Personnel Action that described

---

[8] In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

[9] The name of the department changed to "Office of Strategic Communications" during plaintiff's tenure. Compl. ¶ 37-12.

the "Reason for Termination" as due to "lack of funds." *Id.* ¶¶ 42-13, 42-14.  Other than noting

that Jordan was an "at-will" employee, the Human Resources Director did not orally explain the

reason for the termination. *Id.* ¶ 42-8.

On or about May 7, 2015, nine months after she was terminated, Jordan administratively

filed a discrimination claim with the EEOC. Compl. ¶ 46-1. Plaintiff admits that, in so filing an

administrative claim with the EEOC, she was "attempt[ing] to follow the [EEOC] procedures

applicable … to private [sector] employees,"[10] and not the EEOC's procedures applicable to

federal sector employees;[11] nor was she following the Trust's EEO Procedures. *Id.* 46-8. The

EEOC's regulations for filing claims against a federal employer within the EEOC's jurisdiction

require an aggrieved employee to, *inter alia*: initiate contact with an EEO Counselor at her

employing agency within 45 days of the effective date of the personnel action alleged to be

discriminatory, 29 C.F.R. § 1614.105(a)(1), and to file an administrative claim with the allegedly

discriminatory agency, not with the EEOC, *id.* § 1614.106(a).[12] According to the Complaint, an

EEOC official informed plaintiff that because plaintiff was a federal employee, she had used the

wrong process. Compl. ¶ 46-4. The EEOC did not conduct an investigation or otherwise initiate

any enforcement action. *Id.* ¶ 46-9.

Plaintiff asserts that until she contacted the EEOC in May 2015, she "had no actual or

constructive notice" of the 45-day deadline for contacting an EEO Officer, *see id.* ¶ 46-7, a

deadline included in nearly identical form in both (a) the EEOC's regulations for federal sector

employees under the EEOC's jurisdiction, and (b) the Trust's EEO Procedures, compare 29

---

[10] Such private-sector procedures are generally outlined in 29 C.F.R. Part 1601 (procedures relating to Title VII of the Civil Rights Act of 1964) and 29 C.F.R. Part 1629 (procedures relating to the Age Discrimination in Employment Act of 1967).

[11] Such federal-sector procedures are generally outlined in 29 C.F.R. Part 1614.

[12] The Trust's EEO Procedures contain similar but separate provisions, including a nearly identical provision requiring a complaining employee to make contact with an EEO Counselor at the Trust within 45 days of the effective date of the allegedly discriminatory personnel action. Compl. Ex 2 at 3 ¶ (a)(1).

---

1  C.F.R. § 1614.105(a)(1) with Compl. Ex. 2 at 3 ¶ (a)(1). She alleges that her "first awareness that

2  the Presidio had an EEO process came from contact with the EEOC" in May 2015. *Id.* ¶ 46.

3      Plaintiff contacted the Trust's Equal Employment Opportunity ("EEO") Officer[13] on June

4  5, 2015.[14] *Id.* ¶ 52. On July 9, 2015, the EEO Officer issued plaintiff a notice of right to file a

5  formal administrative-complaint. *Id.* ¶ 53. Plaintiff filed a formal complaint of discrimination

6  with the Trust's EEO Officer on June 10, 2015, alleging that she had been terminated on the

7  basis of her age and/or her gender. *Id.* ¶¶ 54, 5; Compl. Ex. 5 at 26–40. The Trust has not yet

8  issued a decision on the administrative complaint. Compl. ¶ 17-2. Under the Trust's EEO

9  Procedures, because more than 180 days have passed since plaintiff filed her administrative

10  complaint with the Trust, plaintiff "may [now] request ADR and/or a Final Agency Decision by

11  submitting a written request to the Trust's EEO Office." Compl. Ex. 2 at 8 ¶ g. She has,

12  however, requested neither. *See* Compl. ¶¶ 17-2–17-3.

13      Plaintiff filed the instant suit on April 21, 2016. Purporting to rely on the Declaratory

14  Judgment Act, 28 U.S.C. §§ 2201-2202, plaintiff seeks a declaration that: (a) she need not pursue

15  her unlawful termination claim through the Trust's EEO Procedures, and (b) the Trust Act does

16  not exempt the Trust from "Title VII, the ADEA and the EEOC Regulations that are generally

17  applicable to termination claims made against federal agencies." Compl. Prayer for Relief ¶¶ A-

18  1, A-2; *see also* Compl. ¶¶ 15, 58-60.

19                                      **ARGUMENT**

20      Plaintiff Patricia Jordan asks this Court to interpret the Trust Act and to issue a

21  declaration opining on its meaning. Jordan seeks an impermissible advisory opinion. Not only

22  does the Court lack subject matter jurisdiction here, but also Jordan has failed to state a claim

23  upon which relief (declaratory or otherwise) may be granted. The Court should grant defendants'

24  motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6), without

25  _____

26  [13] Plaintiff also alleges that at some unspecified time prior to reaching the Trust's EEO
   Officer, plaintiff "contacted the Presidio[,] seeking the name and contact information of the EEO
   counselor," and that "the Presidio took some time as they needed to hire one." Compl. ¶ 50.

27
28  [14] June 5, 2015 is more than 45 days after July 2, 2014, the date plaintiff was terminated; it is
   339 days after the date on which she was terminated.

reaching the question for which Jordan requests a declaration from the Court. To the extent that the Court does reach that question, the Court should reject the statutory interpretation advanced by Jordan. In addition, plaintiff's attempt to include the EEOC in this lawsuit fails; as the Complaint admits, "plaintiff has no direct cause of action against the EEOC," and the EEOC is not a party whose joinder is required pursuant to Rule 19 of the Federal Rules of Civil Procedure. For all (or any) of these reasons, the Court should dismiss the Complaint.

## I.    THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR THIS CASE

The Court should dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). First, there is no waiver of sovereign immunity allowing plaintiff to maintain her suit. *See Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007) (explaining that a plaintiff suing the United States must establish a waiver of sovereign immunity). Second, plaintiff fails to identify statutory authority vesting the district court with subject matter jurisdiction. *See id.* ("To confer subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting a district court with subject matter jurisdiction."). Third, plaintiff lacks Article III standing — an essential component of subject matter jurisdiction for any claim, not just for claims against the United States — because she does not sufficiently allege an injury-in-fact.[15] *See* Section I.C, *infra*.

### A.    Plaintiff Does Not Identify an Applicable Waiver of Sovereign Immunity

The doctrine of sovereign immunity provides a jurisdictional bar to this suit. Under this doctrine, the United States possesses immunity from suit unless it waives such immunity and consents to be sued. *See, e.g.*, *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015). Any waiver of sovereign immunity "must be 'unequivocally expressed' in the statutory text." *Hajro v. U.S. Citizenship and Immigration Services*, 811 F.3d 1086, 1101 (9th Cir. 2016) (internal citation omitted). A person attempting to sue a federal agency has "the burden of meeting this high

---

[15] Jordan must demonstrate that none of these three jurisdictional defects exist, as any one of them (no waiver of sovereign immunity, no statute vesting the court with subject matter jurisdiction, no standing) would be sufficient on its own to defeat the Court's subject matter jurisdiction to hear this case.

1   standard" of demonstrating that a specific statutory waiver of sovereign immunity covers her

2   asserted claim. *Id.* Plaintiff has failed to do so here.

3        The Complaint contends that three different statutes confer *subject matter jurisdiction*

4   upon the Court: (a) the "federal question" statute, 28 U.S.C. § 1331; (b) the federal jurisdictional

5   statute for civil rights and elective franchise suits, *id.* § 1343; and (c) the Declaratory Judgment

6   Act, 28 U.S.C. §§ 2201-2202. *See* Compl. ¶¶ 13-16. However, none of these three statutes

7   operate as a *waiver of sovereign immunity* allowing plaintiff to bring her purported claim for

8   declaratory relief. *See generally Hajro*, 811 F.3d at 1100 (explaining the "distinct issues" of

9   sovereign immunity and statutory grants of subject matter jurisdiction). The federal-question

10  statute does not itself waive sovereign immunity. *Hughes v. United States*, 953 F.2d 531, 539 n.5

11  (9th Cir. 1992) ("[G]eneral jurisdictional statutes [including 28 U.S.C. § 1331] cannot … waive

12  the government's sovereign immunity.") Neither does the jurisdictional statute for civil rights

13  and elective franchise suits, 28 U.S.C. § 1343, "waive sovereign immunity." *Jachetta v. United*

14  *States*, 653 F.3d 898 (9th Cir. 2011). Nor does the Declaratory Judgment Act "operate as an

15  express waiver of sovereign immunity." *Brazil v. Office of Pers. Mgmt.*, 35 F. Supp. 3d 1101,

16  1110 (N.D. Ca. 2014); *see also Alaska Dept. of Natural Resources v. United States*, 816 F.3d

17  580, 586 (9th Cir. 2016) ("A [purported] claim under the Declaratory Judgment Act may not be

18  used as an end run around [another statute's] … limited waiver of sovereign immunity.").

19       Because plaintiff fails to identify a valid, express waiver of sovereign immunity

20  applicable to her purported claim, the Court must dismiss her Complaint. *See Munns v. Kerry*,

21  782 F.3d 402, 412 (9th Cir. 2015) ("Absent a waiver of sovereign immunity, courts have no

22  subject matter jurisdiction over cases against the [federal] government.") (alteration in original;

23  quotation and citation omitted).

24       Nor can Jordan rely on the "sue and be sued" clause of § 104(h) of the Trust Act as a

25  waiver of sovereign immunity here, as Congress expressly limited that "waiver" concurrent with

26  the scope of the Federal Government's ability to "sue and be sued." *See* Trust Act § 104(h)

27  (making clear that the Trust may only "sue and be sued … to the same extent as the Federal

28  Government"). Moreover, a "grant of capacity to a governmental corporation only means that it

may sue or be sued in its own name, as opposed to that of the government, *on claims for which sovereign immunity has been waived*." 6A The Late Charles Alan Wright et al., Federal Practice and Procedure (hereinafter "Wright & Miller") § 3562 (3d ed. & 2016 Supp) (emphasis added). A potential plaintiff seeking to sue the Trust must still separately identify an operative waiver of sovereign immunity. *See* Trust Act § 104(h); 6A Wright & Miller § 3562. Given the express limitation included in the Trust Act's "sue and be sued" clause, that clause differs from more typical "sue and be sued" clauses that Congress has used in legislative charters for other government corporations. [cite examples] Congress's choice of language in the Trust Act makes clear Congress's intent "to use the 'sue and be sued' clause in a narrow sense." *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 480 (1994). The Act's "sue and be sued" clause does not operate as a waiver of sovereign immunity. *See id.*; *see also* 6A Wright & Miller § 3562.

### B.    No Statutory Authority Vests The District Court With Subject Matter Jurisdiction

In addition to failing to demonstrate a waiver of sovereign immunity allowing plaintiff to maintain her case against the Trust and EEOC, the Complaint also lacks reference to a *valid* and *applicable* statutory authority vesting the Court with subject matter jurisdiction. Plaintiff must establish *both* a waiver of sovereign immunity *and* statutory authority vesting subject matter jurisdiction in order to maintain her suit. The Court need thus need only find the absence of one of these elements in order to dismiss the Complaint. *See, e.g.*, *Alvarado*, 509 F.3d at 1016 (describing two step-inquiry for determining jurisdiction for suits against the federal government); *see also Meyer*, 510 U.S. at 484 ("If there has been such a waiver [of sovereign immunity] … the second inquiry comes into play — that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief.").

As noted above, the Complaint contends that three different statutes confer subject-matter jurisdiction upon the Court: (a) the "federal question" statute, 28 U.S.C. § 1331; (b) the federal jurisdictional statute for civil rights and elective franchise suits, *id.* § 1343; and (c) the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. *See* Compl. ¶¶ 13-16. Defendants disagree

that any of these three statutes allow the Court to exercise subject matter jurisdiction here, and address each statute in turn.

### 1. The federal question statute, 28 U.S.C. § 1331, does not vest the Court with subject matter jurisdiction here.

Plaintiff's suit does not fall within the scope of the federal-question statute's jurisdictional grant, 28 U.S.C. § 1331. Section § 1331 allows the Court to exercise subject matter jurisdiction only where a "civil action[] *arise[s] under*" federal law. 28 U.S.C. § 1331 (emphasis added). With regard to statutory claims,[16] the Supreme Court interprets the phrase "arising under" narrowly, *see* 13D Wright & Miller § 3562 (3d ed. & 2016 Supp.), imposing on the phrase several restrictions including the "well-pleaded complaint" rule, *id.* "The well-pleaded complaint rule stands for the proposition that the court, in determining whether the case *arises under* federal law, will look only to the claim itself and ignore any extraneous material." *Id.* § 3566 (emphasis added). Because Jordan's Complaint does not meet the well-pleaded complaint rule, she does not establish § 1331 jurisdiction.

Jordan cannot rely upon § 1331 merely because her Complaint *refers* to federal law, *cf.* Compl. ¶ 14; she must show that her well-pleaded complaint includes either a cause of action provided by federal law,[17] or a state-law claim that includes some substantial question of federal law. 13D Wright & Miller § 3566 (citing and discussing *Franchise Tax Bd. of Ca. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-9 (1983)).

Jordan purports to assert a claim under the Declaratory Judgment Act, *see* Compl. ¶¶ 16, 55-62, but the Declaratory Judgment Act does not itself support § 1331 jurisdiction. This is so because the Declaratory Judgment Act does "not [provide] … an independent cause of action or theory of recovery, only a remedy." *Wishnev*, 162 F. Supp. 3d at 952. Thus, alleging a claim under the Declaratory Judgment Act (or *purporting* to allege a claim under the Declaratory

---

[16] *I.e.*, Claims "arising under the … laws … of the United States," not Constitutional or treaty-based claims.

[17] The so-called "provisional causes of action" attached as an exhibit to the Complaint plainly do not count, as the Complaint makes clear that Jordan does not plead them. *See* Compl. ¶ 24; *see also* Section II.B, *infra* (discussing provisional causes of action).

Judgment Act) cannot establish by itself a cause of "action[] arising under the … laws … of the United States," *Cf.* 28 U.S.C. § 1331, or provide a basis for federal jurisdiction pursuant to the federal-question statute, *see id.* (providing subject matter jurisdiction under federal-question statute only where an action "arises under" federal law). Therefore, to the extent Jordan wants to use federal question (§ 1331) jurisdiction, she must establish another basis for triggering the federal question statute.

Jordan appears to attempt to bring her case within § 1331's ambit by alluding to "an interagency dispute as to jurisdiction over [administrative EEO] claims related to Title VII and the ADEA," and asserting that this Court possesses jurisdiction to resolve such disputes. *See* Compl. ¶ 14. Elsewhere, she alleges that the Trust and EEOC historically took contrary positions regarding interpretation of the Trust Act. Compl. ¶ 23-6. Such assertions may provide "background" information, but they are not "necessary elements" of Jordan's purported claim for declaratory relief. *Cf.* 13D Wright & Miller § 3566. Therefore, these allegations of an intra-Executive-Branch dispute are best considered "surplusage," not bases for federal court jurisdiction. *See Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003).

Similarly, Jordan cannot gain entry to this Court simply by discussing — and disagreeing with — a memorandum opinion issued in 2004 by the Department of Justice's Office of Legal Counsel, entitled *Applicability of Anti-Discrimination Statutes to the Presidio Trust* (the "OLC Opinion"). *Cf.* Compl. ¶¶ 5, 6, 10, 17-4, 17-5 (all referencing the OLC opinion). The OLC Opinion, like the alleged past disagreement between EEOC and the Trust,[18] is internal to the Executive Branch and does not purport to create rights or obligations of third parties, and therefore the Complaint's references to the OLC Opinion cannot be considered "necessary element[s]" of plaintiff's purported Declaratory Judgment Act claim. *Cf. Lippitt*, 340 F.3d 1033,

---

[18] Compl. ¶¶ 6, 14, 23-6.

1   1045–46; *see also id.* at 1042-43. Jordan's invocation of the OLC Opinion does not provide a

2   basis for federal-question jurisdiction.[19] *See id.*

3        In sum, contrary to the citation included in paragraph 13 of the Complaint, Jordan cannot

4   rely on 28 U.S.C. § 1331 to establish subject matter jurisdiction here because her Complaint does

5   not include a cause of action arising under federal law.

6        **2.    The jurisdictional statute for civil rights and elective franchise does
             not confer subject matter jurisdiction for Jordan's purported claims.**

7

8        In addition to asserting, incorrectly, that the federal-question statute confers jurisdiction

9   on the Court, Jordan's Complaint alleges — again incorrectly — that 28 U.S.C. § 1343 provides

10  the Court with subject matter jurisdiction. *See* Compl. ¶ 13. Section 1343 grants district courts

11  original jurisdiction over civil rights and voting rights suits falling into four categories,

12  enumerated at 28 U.S.C. §§ 1343(a)(1) – (4). Because Jordan does not assert a claim included

13  within § 1343's enumerated list of relevant civil actions, she cannot rely on § 1343 as a basis for

14  federal jurisdiction.

15       **3.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not
             provide subject matter jurisdiction**

16       Finally, Jordan's Complaint fails to establish that the Declaratory Judgment Act confers

17  subject matter jurisdiction for her purported claim. As discussed above, the Declaratory

18  Judgment Act does not provide a basis for establishing subject-matter jurisdiction under the

19  federal question statute, 28 U.S.C. § 1331. *See* Section I.A, *supra*. The Complaint appears to

20  acknowledge that the Declaratory Judgment Act cannot (and does not) on its own confer federal

21  jurisdiction; the Complaint asserts that the Court "*has further* jurisdiction under the Declaratory

22  Judgment Act," "[b]ecause of the original jurisdiction" allegedly established by 28 U.S.C. §§

23  1331 and 1343. *See* Compl. ¶ 15. Indeed, Jordan cannot rely on the Declaratory Judgment Act at

24  all for establishing subject matter jurisdiction. Neither §§ 1331 or 1334 provide the Court with

25

26       [19] The Complaint's lack of an identified (and valid) private right of action allowing Jordan to
         directly challenge the OLC Opinion, further "counsels against" a finding that the references to
27       the OLC Opinion establish federal-question jurisdiction. *See Lippitt*, 340 F.3d at 1046 (observing
         that "the lack of a private right of action generally counsels against the finding of federal
28       question jurisdiction") (citations omitted).

---

1   original, subject-matter jurisdiction here. The Declaratory Judgment Act by its own terms does

2   not confer federal subject matter jurisdiction either. *See Stock W., Inc. v. Confederated Tribes of*

3   *the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Fidelity & Cas. Co. v. Reserve*

4   *Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979); *see generally* 14 Wright & Miller § 3655 (4th ed. &

5   2016 Supp.). Because the Declaratory Judgment Act does not provide an independent grant of

6   federal jurisdiction, *see Stock W.*, 873 F.2d at 1225, Jordan cannot rely on it as a basis of subject

7   matter jurisdiction allowing the Court to hear Jordan's purported claim for declaratory relief.

8        In sum, Jordan fails to identify a statutory grant of subject matter jurisdiction relevant to

9   her purported claim, and therefore the Court must grant defendants' Rule 12(b)(1) motion.

10       **C.    Because Plaintiff Has Not Suffered An Injury-In-Fact, She Does Not
            Establish Constitutional Standing To Pursue Her Purported Claim**

11

12       The doctrine of standing provides another reason why this Court lacks subject matter

13  jurisdiction. Federal courts utilize the doctrine of standing "to determine whether a conflict

14  qualifies as a case or controversy and is therefore capable of judicial resolution." *U.S. ex rel.*

15  *Kelly v. Boeing Co.*, 9 F.3d 743, 747 (9th Cir. 1993). As the party invoking the jurisdiction of

16  this Court, plaintiff bears the burden of alleging facts to satisfy the three elements of

17  constitutional standing: (1) an injury-in-fact (legally cognizable injury), (2) caused by

18  defendant(s), (3) capable of legal redress. *See, e.g.*, *Schmier v. U.S. Ct. of App. for the Ninth Cir.*,

19  279 F.3d 817, 821 (9th Cir. 2002); *see also Raines v. Byrd*, 521 U.S. 811, 818–19 (1997)

20  (plaintiff must satisfy standing requirements "based on [her] complaint..."). The injury-in-fact

21  element requires plaintiff to allege (at least at the motion to dismiss stage[20]) injury that is

22  "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Munns*

23  *v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015). Jordan does not meet her burden of establishing

24  standing; her Complaint does not sufficiently allege an injury-in-fact.

25       Jordan asserts that she is "harmed" by being subject to the Trust's EEO Procedures rather

26  than the EEOC's federal sector process and regulations. *See, e.g.*, Compl. ¶ 7. The Complaint

27  _____
    [20] At a later, summary judgment stage of litigation, a plaintiff "can no longer rest on ... 'mere
    allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Clapper v.*

28  *Amnesty Intern. USA*, 133 S. Ct. 1138, 1148–49 (2013).

1  contends that the Trust's procedures compare unfavorably to the EEOC's procedures in several

2  respects. *Id.* ¶¶ 7–9. However, to establish standing, it is not enough for Jordan to point to

3  aspects of the EEOC process that she thinks more favorable than their counterparts in the Trust's

4  EEO Procedures. *See, e.g.*, *Cour v. Life360, Inc.*, No. 16-cv-805, 2016 WL 4039279, at *2 (N.D.

5  Ca. July 28, 2016) ("[A] plaintiff cannot 'allege a bare procedural violation, divorced from any

6  concrete harm, and satisfy the injury-in-fact requirement of Article III.'") (quoting *Spokeo, Inc.*

7  *v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Jordan must demonstrate actual or imminent, concrete

8  harm. *See Spokeo*, 136 S. Ct. at 1548 (explaining that a "'concrete' injury must be '*de facto*'; that

9  is, it must actually exist … [it must be] 'real,' and not 'abstract'"). Jordan's Complaint fails to

10 demonstrate she has been, or imminently will be, harmed.

### 1.   The Court need not accept the Complaint's representations of how the Trust's EEO Procedures operate.

12     Before analyzing the Complaint's assertion that being subject to the Trust's EEO

13 Procedures causes Jordan harm, defendants note that this Court need not accept as true the legal

14 assertions stated in Jordan's Complaint.[21] *See Caviness*, 590 F.3d at 812. For example, the Court

15 need not accept as true Jordan's characterization of how the Trust's EEO Procedures operate,[22]

16 particularly because her narrative departs from the plain text of those Procedures. *See City of*

17 *Arcadia v. U.S. Environmental Protection Agency*, 265 F. Supp. 2d 1142, 1151 (N.D. Ca. 2003)

18 ("In adjudicating a motion to dismiss, the court need not accept as true unreasonable inferences

19 or conclusory legal allegations cast in the form of factual allegations."); *United States v. Tulare*

---

[21] "[M]aterial allegations of fact," on the other hand, must be accepted by the Court as true at the motion to dismiss stage, with factual allegations "construed … in a light most favorable to the [plaintiff]." *Vasquez*, 487 F.3d at 1249.

[22] The Court may consider the Trust's EEO Procedures directly, without relying on Jordan's portrayal; those Procedures are attached as Ex. 2 to Jordan's Complaint and incorporated into the Complaint by reference. To the extent the contents or operation of the Trust's EEO Procedures were to be considered "factual" rather than "legal," the Court may consider them either under the incorporation-by-reference doctrine or by taking judicial notice of them. *See In re LDK Solar Securities Litigation*, 584 F. Supp. 2d 1230, 1240-41 (N.D. Ca. 2008).

1    *Lake Canal Co.*, 535 F.2d 1093, 1097 (9th Cir. 1976) (explaining that unlike allegations of fact,

2    allegations of law are not accepted as true).

3                    **2.    Jordan's Complaint fails to establish concrete harm.**

4           Jordan does not establish injury-in-fact from having to follow the Trust's EEO

5    Procedures to pursue her discrimination claims, rather than the more-widely-applicable EEOC

6    federal-sector process. Much of the Trust's EEO Procedures contains provisions parallel to those

7    in the EEOC's regulations,[23] *compare* Compl. Ex. 2 at 2-8 § I, *with* 29 C.F.R. §§ 1614.105–

8    1614.108, and — although Jordan's Complaint states that being subject to the Trust's EEO

9    Procedures harms Jordan — the Complaint does not demonstrate that those portions of the

10   Trust's EEO Procedures departing from the EEOC's regulations actually cause Jordan present or

11   imminent, concrete harm, *see* Compl. Ex. 2 at 8–10 §§ II and III. The Complaint's attempt to

12   articulate sufficient harm fails for at least two reasons.

13          First, a number of Jordan's assumptions about the Trust's EEO Procedures appear untrue.

14   For example, the Complaint states incorrectly that the Trust's EEO Procedures "seek to bind

15   employees to mandatory <u>paid</u> arbitration before JAMS," Compl. ¶ 8 (emphasis added). The

16   Trust's EEO Procedures do no such thing, instead providing:

17              [T]he Trust shall offer the complainant alternative dispute resolution
                ("ADR"), consisting of mediation and/or advisory arbitration, which shall
18              result in a written opinion by the arbitrator and a written Final Agency
                Decision by the Presidio Trust Executive Director following review and
19              consideration of the arbitrator's written opinion. … The ADR process shall
                consist of mediation (where jointly agreed to) followed by advisory
20              arbitration. Where the parties agree to mediate, the Trust and the complainant
                will jointly choose a mediator. … Mediation and advisory arbitration under
21              the ADR process will be conducted pursuant to procedures mutually
                acceptable to the parties. If the parties cannot agree to a set of procedures
22              within 10 days after the complainant has elected ADR, advisory arbitration

23   _____

24   [23] The Trust's EEO Procedures explicitly state that it "address[es] all complaints of
     discrimination through processes parallel to those contained in [the EEOC's regulations,] 29
25   C.F.R. § 1614.105 through § 1614.108(e) and other sections as specifically noted." Compl. Ex. 2
     at 2. At various points in the administrative process, the Trust considers whether an employee's
26   claim "relates to appointment, compensation, duties and/or termination," such that the claim
     should proceed on an administrative track specific to the Trust, or whether the claim "can be
27   made without reference to these matters," such that the Trust will use the EEOC's procedures in
     29 C.F.R. Part 1614, to process such claim(s) to final resolution. *Id.*

28

shall be conducted according to the JAMS Employment Arbitration Rules and Procedures … . [24]

Compl. Ex. 2 at 2; *id.* at 9 § III(B)(1); *id.* at 10 § III(B)(2). The plain language of the Trust's

EEO Procedures above show that the Procedures do not require "*paid* arbitration *before* JAMS,"

cf. Compl. ¶ 8 (emphasis added); they instead reference the JAMS rules which any arbitrator

selected by the parties may use. Compl. Ex. 2 at 10 § III(B)(2). Moreover, the Trust's EEO

Procedures provide that the Trust will bear the costs associated with the provision of mediation

and arbitration services. *Id.* Jordan's Complaint also asserts, again incorrectly, that the Trust's

EEO Procedures "expressly den[y]" a complaining employee "from recovering her own

attorney's fees and expenses." Compl. ¶ 8. Actually, the Trust's EEO Procedures provide that

"[e]ach party will be responsible for such party's own expenses, attorney's fees or other fees

associated with … the proceedings, *unless otherwise agreed upon*." Compl. Ex. 2 at 10 §

III(B)(2).

Second, Jordan asserts hypothetical, not actual or imminent, harm. She professes harm

from being deprived of the "normal … remedies" available through the EEOC's federal-sector

process.[25] Compl. ¶ 7. But this assertion relies on a chain of hypothetical suppositions, including:

(a) that Jordan could show good cause for missing — by more than seven-fold — the 45-day

deadline that both the Trust's EEO Procedures *and* the EEOC's federal-sector regulations require

---

[24] The Trust offers ADR where it "determines that a claim or claims cannot be made without reference to appointment, compensation, duties and/or termination." Compl. Ex. 2 at 2. If the Trust determines that a claim or claims *can* be made without reference to such matters, then the Trust follows instead the procedures contained in 29 CFR Part 1614 to process the claim or claims to final resolution. *Id.*

[25] Elsewhere, Jordan asserts harm from *not knowing* what remedies may be available to her through the Trust's EEO Procedures, stating that the Trust's EEO Procedures fail to specify the available remedies, and that it remains "pure speculation" whether she might be awarded "the traditional remedies" available under the EEOC's federal-sector process. Compl. ¶ 8. Jordan's concerns here are overstated. Although the Trust's EEO Procedures do not separately enumerate the available remedies, they provide the Executive Director with broad authority and discretion to grant appropriate relief, and they incorporate by reference the remedies available under the EEOC's regulations. *See* Compl. Ex. 2 at 11 § III(D)(3) ("When the Executive Director, in an individual case of discrimination, finds that an … employee has been discriminated against, the Executive Director may provide any remedy or relief that he deems equitable and just provided such relief would have been available under the provisions of 29 C.F.R. § 1614.501 and is not otherwise inconsistent with law.").

1   for contacting the Trust's EEO counselor; (b) that she would be found, under either the Trust's

2   EEO process or the EEOC's process, to have asserted a valid claim of employment

3   discrimination, and thereby determined to be eligible for remedies; and (c) that, if she were to

4   show eligibility for remedies, the Trust would fail to provide appropriate relief, and/or that she

5   would have necessarily received better relief through the EEOC's process.[26] Such "'highly

6   attenuated chain of possibilities'" does not demonstrate an injury sufficiently concrete to confer

7   standing. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 966 (N.D. Ca. 2015) (quoting

8   *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147–48 (2013)).

9   **II.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

10          **A.   The Declaratory Judgment Act Does Not Provide A Cause Of Action, Only A
             Form Of Relief**

11
12          Plaintiff purports to plead a sole "cause of action," one for "declaratory relief."[27] Compl.

13   ¶¶ 55-62. However, as discussed above, "declaratory relief" does not constitute "an independent

14   cause of action or theory of recovery, only a remedy." *Wishnev*, 162 F. Supp. 3d at 952. Plainly,

15   plaintiff fails to state a "claim for declaratory relief," *cf.* Compl. ¶ 1, for which relief can be

16   granted.

17          **B.   Plaintiff Does Not Plead Any Claims Other Than Her Purported Declaratory
             Judgment Act Claim**

18          The Complaint includes no claims other than the purported claim for declaratory relief.

19   Although the Complaint describes two "provisional causes of action," the Complaint makes clear

20   that Jordan "does not yet plead the provisional causes of action." Compl. ¶ 24. The Complaint

21   explains she will not seek to plead the so-called provisional causes of action "unless this court

22   first determines the request for declaratory relief in Jordan's favor." *Id.* ¶ 25. Because these

23

24          [26] The EEOC's regulations do not guarantee that certain relief will be awarded to an employee
     who demonstrates employment discrimination; rather they generally describe remedies that may

25   be awarded depending on the circumstances. *See* 29 C.F.R. § 1614.501.

26          [27] Jordan describes two "provisional causes of action" included as an exhibit to the Complaint.
     Compl. ¶ 24. The Complaint explains: "This suit does not yet plead the provisional causes of

27   action. … They will not be plead unless this court first determines the request for declaratory
     relief in Jordan's favor." *Id.* ¶ 25. The Court should not consider the so-called provisional causes

28   of action.

1  potential claims are not pled, they do not provide a basis for which relief can be granted, and

2  should be disregarded.

3        **C.**      **A Plain Reading Of Trust Act Does Not Support Plaintiff's Interpretation**

4        Because Jordan neither establishes subject matter jurisdiction, *see supra* § I, nor pleads a

5  valid cause of action, *supra* §§ II(A)-(B), the Court should dismiss this case; it need not reach the

6  question whether the Trust Act exempts the Trust from otherwise applicable laws and procedures

7  relating to federal-employee claims of unlawful termination, allowing the Trust to establish

8  Trust-specific EEO Procedures for Trust employees alleging unlawful, discriminatory

9  termination.  To the extent, however, that the Court finds both (i) that it possesses subject matter

10  jurisdiction to hear this case, and (ii) that the Declaratory Judgment Act provides more than a

11  remedy, it provides a potential cause of action, the Court should nonetheless grant defendant's

12  motion to dismiss pursuant to Rule 12(b)(6) because Jordan seeks an incorrect interpretation of

13  the Trust Act.

14        Jordan asks the Court to declare that the Trust Act means something different than what

15  its plain text indicates, specifically that the "limited purpose of the amended organic statute was

16  only to exempt the Trust from Civil Service Regulations." Compl. ¶ 11. The plain text of

17  § 103(c)(7) (as amended) makes clear, however, that the applicable exemption is not so limited.

18  Section 103(c)(7) provides: "the Trust is authorized to … terminate the services of … employees

19  as it deems necessary," and may do so, "[n]otwithstanding any other provisions of law."  The

20  statute further specifies that the Trust may terminate the services of employees "without regard"

21  to either Title 5 of the United States Code, or any "other law related to appointment,

22  compensation or termination of Federal employees."  Trust Act § 103(c)(7).

23        Jordan asserts that Congress could not have intended to exempt the Trust from the civil

24  rights statutes and regulations, as they apply to Federal personnel decisions regarding

25  appointment, compensation, or termination.  *See* Compl. ¶ 11.  But, the language employed by

26  Congress in other sections of the Trust Act shows that Congress knew how to include specific

27  civil rights laws within broader provisions otherwise containing statutory exemptions. For

28  example, §104(b) of the Trust Act states:

> Federal laws and regulations governing *procurement* by Federal agencies *shall not apply to the Trust, with the exception of* laws and regulations related to Federal government contracts governing working conditions and wage rates, including the provisions of sections 276a-276a-6 of title 40, United States Code (Davis-Bacon Act), *and any civil rights provisions otherwise applicable thereto*.

*See* App. A (emphasis added). Significantly, none of the civil rights laws applicable to government contracts and referenced in §104(b) apply directly to the Trust and its employees. Rather, those laws apply only to the Trust's contractors and subcontractors. Consequently, the fact that Congress chose not to include any specific limiting language regarding civil rights in §103(c)(7) while specifically doing so in §104(b) is further evidence of Congress' intent to exempt the Trust from any statutory and regulatory provisions that relate to the appointment, compensation, duties or termination of employees.

Congress must be presumed to have acted intentionally, particularly with regard to government corporations, which are creatures of their enabling statutes. *Bair v. Pacific Northwest Sugar Co. LLC*, 85 Fed. Appx. 555, 558 (9th Cir. 2004) (looking to plaining meaning of statute when assessing government corporation's authority); *see also Principles of Federal Appropriations Law*, ch. 15, pt. B, § 2. The fact that the Trust's employees are not the only federal employees who are not subject to the EEOC's federal-sector process[28] further supports an understanding that Congress made the deliberative choice to broadly exempt the Trust from otherwise applicable personnel laws, by including the exemption language in §103(c)(7) of the Trust Act here.

While Jordan makes various public policy assertions why the statute should be construed the way she hopes, she cannot escape the statutory language or the clear intent of Congress. The Trust itself is a creature of Congress. It has — and only has — such powers as Congress determines. Jordan may disagree with the decisions that Congress has made, but only Congress has the power to change the Trust Act.

---

[28] For example, the EEOC's regulations do not apply to (1) uniformed members of the military departments, (2) employees of the General Accounting Office; or (3) employees of the Library of Congress. 29 C.F.R. 1614.103(d)

**III.    AN ADDITIONAL BASIS EXISTS TO DISMISS EEOC FROM THE LAWSUIT: PLAINTIFF PURPORTS TO JOIN EEOC PURSUANT TO RULE 19 OF THE FEDERAL RULES OF CIVIL PROCEDURE, BUT JUST ADJUDICATION DOES NOT REQUIRE EEOC'S PRESENCE**

Jordan attempts to join the EEOC as a "necessary-party defendant," "strictly in intervention under … Rule 19" of the Federal Rules of Civil Procedure.[29] Compl. ¶ 23-2. Jordan asserts that disposing of the action in the EEOC's absence may "as a practical matter impair or impede its [the EEOC's] ability to protect its interests." *Id.* ¶ 23-5. EEOC disagrees.

Under Rule 19, courts follow a multi-step process: (1) assessing whether a person is a "required party," that is, whether just adjudication requires a person's presence in the action; (2) determining the feasibility of joining the person, *e.g.*, whether joinder would deprive the Court of subject matter jurisdiction; and (3) if joinder if found necessary but nonfeasible, considering whether the action should be dismissed or should nonetheless proceed. *See Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). Here, Jordan's attempt to join EEOC as a necessary-party defendant fails at the first step — her Complaint does not establish that just adjudication requires the EEOC's presence in this action.

Rule 19(a)(1) defines a "required party" as a person:

> (A) [without whom] … the court cannot accord complete relief among existing parties; or
>
> (B) [who] … claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Jordan's Complaint asserts that the EEOC falls into category (a)(1)(B)(i), as a potential party who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest," Fed. R. Civ. P. 19(a)(1)(B)(i). *See* Compl. ¶¶ 23-4, 23-5 (asserting

---

[29] Jordan admits that "[s]he has no direct cause against the EEOC." Compl. ¶ 23-1.

that EEOC "has an interested stake as to Jordan's request for declaratory relief as it broadly affects the agency's ability to exercise administrative jurisdiction over such claims" and that the "EEOC is so situated that disposing of the action in its absence may as a practical matter impair or impede its ability to protect its interest"). Notably, Jordan does not allege that without the EEOC, "the court cannot accord complete relief among existing parties" (*i.e.*, Jordan and the Trust). *Cf.* Fed. R. Civ. P. 19(a)(1)(A). Nor does she assert that the absence of the EEOC would "leave [her] … subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the [EEOC's] interest." *Cf. id.* 19(a)(1)(B)(ii).

Although the provisions of Rule 19 are typically used by defendants or interested third-parties, not by plaintiffs, *see* 7 Wright & Miller § 1602 ("Compulsory joinder is an exception to the general practice of giving plaintiff the right to decide who shall be the parties to a lawsuit."), the Ninth Circuit has recognized the ability of a plaintiff to rely on Rule 19 "for the 'sole purpose' of effecting complete relief between the parties." *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 783 (9th Cir. 2005). In other words, a plaintiff may invoke Rule 19 only to join a person who meets the definition of required party under Rule 19(a)(1)(A). Because Jordan's Complaint instead purports that EEOC is a required party under Rule 19(a)(1)(B)(i), the Rule 19 joinder provisions are not available to Jordan.

Another reason why Jordan cannot rely on Rule 19(a)(1)(B)(i) is because the EEOC does not on its own believe its presence in this action necessary. It does not "*claim* an interest" here. *Cf.* Fed. R. Civ. P. 19(a)(1)(B).

Even if the Court were to find that Jordan establishes the EEOC as a "required party" under Rule 19(a), Jordan still could not utilize Rule 19 to require EEOC's presence. This is so because, as discussed in Section I, above, the Court lacks subject matter jurisdiction over EEOC, and thus joinder of EEOC is "not feasible." *See* Fed. R. Civ. P. 19(b).

Accordingly, Jordan's failure to demonstrate the Rule 19 requirements provides another basis for the Court to dismiss Jordan's Complaint as against EEOC.

1

## **CONCLUSION**

2

As discussed above, Jordan does not establish subject matter jurisdiction, nor does she

3

state a claim for which relief can be granted. The Court should grant defendants' motion to

4

dismiss pursuant to Rule 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure.

5

6

DATED:  September 29, 2016                     Respectfully submitted,

7

                                                                BENJAMIN C. MIZER
                                                                 Principal Deputy Assistant Attorney General

8

                                                                 CARLOTTA P. WELLS
                                                                  Assistant Branch Director

9

                                                                     *  /s/ Lisa Zeidner Marcus*

10

                                                                LISA ZEIDNER MARCUS (N.Y. Bar 4461679)
                                                                 Trial Attorney

11

12

                                                                  United States Department of Justice
                                                                  Civil Division, Federal Programs Branch

13

                                                                  20 Massachusetts Avenue, NW, 7th Floor
                                                                  Washington, D.C. 20530

14

                                                                  Telephone: (202) 514-3336
                                                                  Facsimile: (202) 616-8470

15

                                                                  lisa.marcus@usdoj.gov

16

                                                                  Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28