United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA JORDAN,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PRESIDIO TRUST, et al.,<br><br>    Defendants. | Case No. 16-cv-02122-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 39 |

On April 21, 2016, Plaintiff Patricia Jordan filed the instant case against Defendants Presidio Trust and the United States Equal Employment Opportunity Commission ("EEOC"). (Compl., Dkt. No. 1.) Plaintiff alleges that she was terminated from her position with the Presidio Trust based on her age and gender, and brings a single cause of action for declaratory relief on whether her employment claims are subject to the "Presidio Trust Procedures Related to Claims of Workplace Discrimination." (Compl. ¶¶ 5, 58-59.) Defendants now move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot., Dkt. No. 39.)

The Court deemed the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b) and VACATED the hearing previously set for January 19, 2017. Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motions, for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

The Presidio Trust ("Trust") was established as a wholly-owned government corporation to manage the Presidio, located in the Golden Gate National Recreation Area. Presidio Trust Act,

1   Pub. L. No. 104-333 (1996) (codified as amended at 16 U.S.C. § 460bb appendix (2001)).  The

2   Presidio Trust Act exempts the Trust from certain federal laws and regulations.  *E.g.*, Presidio

3   Trust Act § 104(b) (exempting the Trust from procurement requirements).  At issue in this suit is §

4   103(c)(7), which states:

> **(7) Staff.**—Notwithstanding any other provision of law, the Trust is authorized to appointment and fix the compensation and duties and terminate the services of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, or other laws related to the appointment compensation or termination of Federal employees.

9   In 2004, Deputy Attorney General Noel J. Francisco issued an opinion which concluded

10  that the Trust was exempt from section 717 of Title VII of the Civil Rights Act and section 15 of

11  the Age Discrimination in Employment Act ("ADEA"), to the extent these statutes applied to

12  appointment, compensation, duties, or termination of Trust employees.  Applicability of Anti-

13  Discrimination Statutes to the Presidio Trust, 28 Op. Att'y Gen. 84, 84-85 (2004).  In 2006, the

14  Trust issued the "Presidio Trust Procedures Related to Claims of Workplace Discrimination,"

15  which created a "framework for adjudicating complaints of discrimination where issues arise."

16  (Compl., Exh. 2 at 1.)  Per the Presidio Trust Procedures, claims of employment discrimination or

17  retaliation under Title VII, the ADEA, the Rehabilitation Act, and the Equal Pay Act must be

18  processed in accordance with the Presidio Trust Procedures, and cannot be raised to the Equal

19  Employment Opportunity Commission ("EEOC").  (*Id.* at 2.)

20  Plaintiff worked at the Presidio's Office of the Executive Director from December 2, 2013

21  to August 2, 2014.  (Compl. ¶¶ 32-34.)  During her employment Plaintiff had a medical condition

22  affecting her uterus.  (Compl. ¶ 35.)  In May 2014, Plaintiff had a medical problem requiring

23  treatment, requiring her to go to her direct supervisor, Joshua Steinberger.  (Compl. ¶¶ 37-7, 39.)

24  During this meeting, Plaintiff explained her problem.  (Compl. ¶ 39-2.)  Plaintiff alleges that after

25  she finished, Steinberger simply responded, "It is what it is" in a cold and impersonal tone.

26  (Compl. ¶¶ 39-4-39-5.)  Although Steinberger had been friendly to Plaintiff prior to the meeting,

27  following the meeting "he looked at Jordan like she had some type of terrible disease" and "never

28  smiled at her anymore."  (Compl. ¶¶ 39-9-39-12.)  Steinberger also excluded Plaintiff from a

United States District Court
Northern District of California

departmental quarterly retreat, despite having invited her before. (Compl. ¶¶ 40-1-40-3.) Plaintiff also alleges that when a co-worker asked Steinberger about his weekend, he walked over to where Plaintiff was sitting and talked about how great his weekend was, and how he had "cleaned out his underwear drawer" and bought new underwear, and "how great it felt wearing clean underwear." (Compl. ¶¶ 41-2-41-5.) He then looked at Plaintiff and winked; Plaintiff "felt the clear implication was she was wearing dirty, soiled underwear due to her problem," and that Steinberger's innuendo and sarcasm was meant to demean her in front of the group. (Compl. ¶¶ 41-6-41-8.) Plaintiff then went to the restroom and cried, humiliated by Steinberger's actions. (Compl. ¶ 41-10.)

On July 2, 2014, Plaintiff was informed by Steinberger and Human Resources Director Bart Ferrell that it was her last day of employment. (Compl. ¶ 42-5.) Plaintiff was shocked, but when she asked for a reason, Ferrell told her that because she was an at-will employment no reason had to be given. (Compl. ¶¶ 42-6-42-8.) Ferrell gave her a document which stated that the reason for termination was due to "lack of funds." (Compl. ¶¶ 42-11-42-14.) Plaintiff believes this reason was pretextual, as neither Steinberger nor Ferrell had mentioned the lack of funds when her employment was terminated. (Compl. ¶ 42-15.) Later, on November 14, 2014, Plaintiff noticed that the Presidio had re-advertised the availability of her prior position, which she believes further shows pretext. (Compl. ¶¶ 44-1, 44-5.)

On May 6, 2015, Plaintiff filed a claim with the EEOC. (Compl. ¶ 46-1.) Plaintiff also filed a claim with the California Department of Fair Employment and Housing. (Compl. ¶ 46-2.) She was told by both agencies that because she was a federal employee, her claim was outside of their jurisdiction. (Compl. ¶ 46-4, 46-5.) Plaintiff was advised to visit the "EEO Counselor" at the Presidio Trust. (Compl. ¶ 46-6.) When Plaintiff contacted the Presidio, they were initially unable to provide the name and contact information of the EEOC Counselor because they needed to hire one. (Compl. ¶ 50.) The Presidio later identified Keena Ashley as the EEOC counselor. (Compl. ¶ 51.) On June 5, 2015, Plaintiff completed the intake questionnaire with Ashley, and on July 9, 2015, "Ashley noticed [Plaintiff]'s right to file a formal complaint." (Compl. ¶¶ 52-53.) The following day, Plaintiff filed her formal complaint. (Compl. ¶ 54.) Ashley confirmed receipt of the complaint on July 16, 2015. (Compl. ¶ 54-2.)

On August 11, 2015, Ashley again confirmed receipt of Plaintiff's complaint, and also provided the Presidio Trust Procedures. (Compl. ¶¶ 45-6, 54-3.) These procedures require that "[a]n aggrieved person . . . initiate contact with a Counselor within 45 days after the date of the allegedly discriminatory incident or, in the case of a personnel action, within 45 days of the effective date after the action." (Compl., Exh. 2 at 3.) Plaintiff alleges that this was the first time she was made aware of the Presidio Trust Procedures, as these procedures are not available online and were never provided to her when she was hired, during her employment, or when she was terminated. (Compl. ¶¶ 45-4-45-11.)

After filing her complaint, 180 days passed without an agency decision. (Compl. ¶ 17-2.) Plaintiff contends that if the EEOC regulations did apply to her claim, "she would now have available substantial rights and remedies," including the right to request an evidentiary hearing or to file suit in federal court. (Compl. ¶¶ 17-3.) Plaintiff then filed the instant suit, seeking declaratory relief on whether her discrimination claims are subject to the Presidio Trust Procedures, or "whether her claims enjoy the rights under Title VII, the ADEA and EEOC Regulations." (Compl. ¶¶ 58-59.) Should Plaintiff's request for declaratory relief be granted, she intends to bring claims for gender and age discrimination. (Compl., Exh. 1.)

### B. Procedural History

On September 30, 2016, Defendants filed the instant motion to dismiss under Rules 12(b)(1) and 12(b)(6). On December 15, 2016, Plaintiff filed her opposition, attaching a proposed First Amended Complaint raising a claim for injunctive relief to have her claim processed under Title VII, the ADEA, and the EEOC Regulations. (Plf.'s Opp'n, Dkt. No. 46.) On January 5, 2017, Defendants filed their reply brief. (Defs.' Reply, Dkt. No. 48.)

## II.   LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to

4

establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Motion to Dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

#### A.   Motion to Dismiss under Rule 12(b)(1)

Defendants raise three grounds for dismissal under Rule 12(b)(1): (1) no waiver of sovereign immunity, (2) failure to identify statutory authority vesting the Court with subject matter jurisdiction, and (3) lack of Article III standing. (Defs.' Mot. at 10.)

##### i.   Sovereign Immunity

"As a sovereign, the United States is immune from suit unless it waives such immunity." *Chadd v. United States*, 794 F.3d 1104, 1108 (9th Cir. 2015). Such waivers must be "'unequivocally expressed' in the statutory text," and are "to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of the Army v. Blue Fox*, 525 U.S. 255, 261 (1999). Furthermore, the party seeking the waiver has "the burden of meeting this high standard." *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1101 (9th Cir. 2016).

Here, Defendants assert that Plaintiff has failed to identify a statute that confers a valid, express waiver of sovereign immunity applicable to her claim. (Defs.' Mot. at 10-11.) In her opposition, Plaintiff does not identify an express waiver in her complaint, but instead seeks leave to file an amended complaint which will bring causes of action under the Administrative Procedures Act ("APA"). (Plf.'s Opp'n at 3.) In general, the APA states: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA permits the United States to be named as a defendant so long as the action seeks relief other than

money damages and "stat[es] a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority . . . ." *Id.*

Defendants do not argue that Plaintiff should not be permitted to amend her complaint or to bring causes of action under the APA. While Defendants dispute that Plaintiff's proposed first amended complaint would adequately cure the sovereign immunity issue, they make no legal arguments thereon; instead, they state only that should Plaintiff be permitted to file her proposed first amended complaint, Defendants should have the opportunity to respond to that complaint. (Defs.' Reply at 2 n.1.) Accordingly, the Court finds that Plaintiff has failed to identify an express waiver of sovereign immunity applicable to her claim in the operative complaint, and dismisses Plaintiff's complaint on that basis. Plaintiff is given leave to file a first amended complaint bringing causes of action under the APA. In granting leave to file a first amended complaint, the Court makes no determination on whether Plaintiff's proposed first amended complaint adequately cures the sovereign immunity issue.

### ii. Subject Matter Jurisdiction

In the alternative, Defendants contend that Plaintiff has not established subject matter jurisdiction. (Defs.' Mot. at 12.) The Ninth Circuit has made clear that "[a]lthough the concepts are related, sovereign immunity and subject matter jurisdiction present distinct issues." *United States v. Park Place Assocs.*, 563 F.3d 907, 923 (9th Cir. 2009). Thus, a waiver of sovereign immunity "does not guarantee a forum," while "the mere existence of a forum does not waive sovereign immunity." *Id.* at 923, 924.

Here, Defendants argue that the Declaratory Judgment Act does not vest a court with subject matter jurisdiction in this case. (Defs.' Mot. at 13-14.)[1] Again, Plaintiff does not directly respond to Defendants' argument, instead stating that the proposed first amended complaint will cure this deficiency. (Plf.'s Opp'n at 3.)

The Court finds that Plaintiff has failed to establish subject matter jurisdiction in the

---

[1] Defendants also argue that Plaintiff's claim does not fall under 28 U.S.C. § 1343, which concerns civil rights and elective franchise. Plaintiff appears to concede this point, as her proposed first amended complaint no longer lists this statute as a basis for jurisdiction. (*See* Proposed First Amended Compl. ¶¶ 13-16, Dkt. No. 46-1.)

operative complaint, and dismisses Plaintiff's complaint for this additional reason. In general, declaratory relief under the Declaratory Judgment Act "is discretionary, for the Declaratory Judgment Act is deliberately cast in terms of permissive, rather than mandatory, authority." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (internal quotation omitted). The Ninth Circuit has made clear that "[subject matter jurisdiction is a necessary *predicate* to the issuance of a declaratory judgment, so if subject matter jurisdiction over [a party's] action c[an]not be established, the question whether to exercise discretionary jurisdiction would not arise." *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1107 (9th Cir. 2001) (emphasis added). Thus, before a party can seek declaratory relief under the Declaratory Judgment Act, subject matter jurisdiction must be established; the cause of action for declaratory judgment cannot itself establish subject matter jurisdiction. *See Gov't Emps. Ins. Co.*, 133 F.3d at 1222-23 ("A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III . . . [and] must also fulfill statutory jurisdictional prerequisites"); *Plum Creek Timber Co. v. Trout Unlimited*, 255 F. Supp. 2d 1159, 1164 (D. Idaho 2003) ("The Declaratory Judgment Act, however, does not provide an independent basis for of [sic] federal subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Rather, it vests a district court with discretion to hear an action which is already within its jurisdiction"). Because, Plaintiff's operative complaint pleads only a single cause of action for declaratory relief under the Declaratory Judgment Act, but does not otherwise identify an independent basis for subject matter jurisdiction, Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. Plaintiff is, however, given leave to file an amended complaint bringing causes of action under the APA. Again, the Court makes no determination on whether Plaintiff's proposed first amended complaint adequately establishes subject matter jurisdiction.

### iii. Standing

Finally, Defendants argue that Plaintiff has failed to establish Article III standing because she has not demonstrated that she has suffered an injury in fact. (Defs.' Mot. at 16.) Injury in fact is established when there is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) ("The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant"). Here, Defendants contend that Plaintiff does not show that the differences between the Presidio Trust Procedures and the EEOC Procedures will actually cause Plaintiff present or imminent harm. (Defs.' Mot. at 18.)

Plaintiff responds that she does not need to establish actual and concrete injury because "[s]tanding under a statutory cause of action extends to plaintiffs whose interests 'fall within the *zone of interests protected by the law invoked*,'" citing the Supreme Court's decision in *Lexmark*. (Plf.'s Opp'n at 4.) In other words, Plaintiff argues that she has established standing by showing that her claim falls within the zone-of-interests of the law invoked. Plaintiff, however, is mistaken. *Lexmark* did not concern Article III standing but *prudential* standing; the Supreme Court made clear that the plaintiff had Article III standing. *Lexmark*, 134 S.Ct. at 1386 ("Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false-advertising claim, and we are satisfied that they do"). Despite the plaintiff having Article III standing, the defendant argued that the courts should nonetheless "decline to adjudicate [the plaintiff's] claim on grounds that are 'prudential,' rather than constitutional." *Id.* To determine whether the plaintiff had prudential standing, the Supreme Court applied the zone-of-interests test. *Id.* at 1387.[2] The Supreme Court's application of the zone-of-interests test was limited to prudential standing, and it did not modify or change the Article III standing inquiry of actual injury.

Because Plaintiff does not point to an actual and concrete injury, the Court dismisses the operative complaint on the additional ground that Plaintiff lacks standing. In filing an amended complaint, Plaintiff will need to establish actual injury; as discussed above, reliance on the zone-of-interests test is insufficient.

---

[2] Plaintiff's other citation, *Ray Charles Foundation v. Robinson*, likewise made clear that "[t]here is no challenge to the Foundation's Article III standing," before determining whether the plaintiff's claim satisfied the zone-of-interests test to establish prudential standing. 795 F.3d 1109, 1116, 1119-20 (9th Cir. 2015).

### B. Motion to Dismiss under Rule 12(b)(6)

In the alternative, Defendants seek dismissal under Rule 12(b)(6), arguing that Plaintiff fails to state a claim upon which relief can be granted because her interpretation of § 103(c)(7) of the Trust Act is incorrect. (Defs.' Mot. at 20-21.) Plaintiff contends that Defendants' motion to dismiss is in fact an improper summary judgment motion because interpretation of the statute requires review of legislative intent and the statutory framework, such that "the [C]ourt's ultimate decision will remain a highly factual inquiry." (Plf.'s Opp'n at 6.)

Because the Court has dismissed Plaintiff's complaint pursuant to Rule 12(b)(1), the Court need not determine the merits of whether Plaintiff has established a claim under Rule 12(b)(6). The Court, however, observes that in general, statutory interpretation may properly be conducted at the motion to dismiss stage because it is a legal question. *E.g.*, *Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 554-55 (9th Cir. 2016) (reviewing district court's dismissal of an action and finding that questions of statutory interpretation de novo); *United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods.*, 370 F. Supp. 2d 993, 995 (9th Cir. 2005) (adjudicating motions to dismiss which "pose pure questions of statutory interpretation"); *Preap v. Johnson*, 303 F.R.D. 566, 573-74 (N.D. Cal. 2014) (adjudications motion to dismiss which "turns on a question or pure statutory interpretation: what is the meaning of the phrase 'when the alien is released' in Section 1226(c)"); *see also United States v. Rivera*, 131 F.3d 222, 224 (1st Cir. 1997) ("the interpretation of a statute presents a purely legal question"). Further, a factual dispute over legislative history is distinct from a factual dispute over the facts of this case, *i.e.*, the circumstances of Plaintiff's termination, which are not at issue in this motion and would need to be determined by a fact-finder. Thus, it is not clear that the Court will be unable to interpret the statute at the motion to dismiss stage, assuming Plaintiff is able to adequately establish waiver of sovereign immunity, subject matter jurisdiction, and standing.

### C. Rule 19

Finally, Defendants argue that the EEOC should be dismissed for the alternative reason that it is not a "necessary-party defendant." (Defs.' Mot. at 23.) The operative complaint joins the EEOC "strictly in intervention under Fed. Rules Civ. Proc., Rule 19." (Compl. ¶ 23-2.) Rule 19

concerns the required joinder of parties, such as those the court cannot accord complete relief among the existing parties without or those who claim an interest relating to the subject of the action. Plaintiff does not argue that the EEOC should be added per Rule 19, but instead states that she will file an amended complaint which names the agency directly. (Plf.'s Opp'n at 7.) Defendants in turn do not object to the filing of an amended complaint, but state only that they request the opportunity to respond to that complaint once filed. (Defs.' Reply at 5 n.5.) The Court therefore dismisses the EEOC on this additional ground, and grants Plaintiff leave to file an amended complaint naming the agency directly. The Court makes no determination whether the EEOC is a proper party in this case.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss under Rule 12(b)(1). Further, the EEOC is dismissed on the additional ground that Rule 19 is inapplicable in the instant case. The Court also gives Plaintiff leave to file a first amended complaint which adds claims under the APA. Plaintiff has thirty (30) days from the date of this order to file the amended complaint.

IT IS SO ORDERED.

Dated: January 30, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge