UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA JORDAN,<br>　　　　Plaintiff,<br>　　v.<br>THE PRESIDIO TRUST, et al.,<br>　　　　Defendants. | Case No. 16-cv-02122-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 79 |

Plaintiff Patricia Jordan brings the instant action against Defendants Presidio Trust, the United States Equal Employment Opportunity Commission ("EEOC"), Jean S. Fraser, and Jenny R. Yang. (Second Amended Compl. ("SAC"), Dkt. No. 78.) Plaintiff alleges that she was terminated from her position with the Presidio Trust based on her age and gender, and brings a single cause of action under the Administrative Procedures Act ("APA"). (SAC ¶¶ 1, 5.) Defendants now move to dismiss Plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Mot., Dkt. No. 79.)

Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel at the November 2, 2017 hearing, the Court GRANTS Defendants' motion to dismiss.

## I.　BACKGROUND

### A.　Factual Background

The Presidio Trust ("Trust") was established as a wholly-owned government corporation to manage the Presidio, located in the Golden Gate National Recreation Area. Presidio Trust Act, Pub. L. No. 104-333 (1996) (codified as amended at 16 U.S.C. § 460bb appendix (2001)). The Presidio Trust Act exempts the Trust from certain federal laws and regulations. *E.g.*, Presidio

Trust Act § 104(b) (exempting the Trust from procurement requirements). At issue in this suit is § 103(c)(7), which states:

> **(7) Staff.**—Notwithstanding any other provision of law, the Trust is authorized to appointment and fix the compensation and duties and terminate the services of an executive director and such other officers and employees as it deems necessary without regard to the provisions of title 5, United States Code, or other laws related to the appointment, compensation or termination of Federal employees.

In 2004, Deputy Attorney General Noel J. Francisco issued an opinion concluding that the Trust was exempt from section 717 of Title VII of the Civil Rights Act and section 15 of the Age Discrimination in Employment Act ("ADEA"), to the extent these statutes applied to appointment, compensation, duties, or termination of Trust employees. Applicability of Anti-Discrimination Statutes to the Presidio Trust, 28 Op. Att'y Gen. 84, 84-85 (2004). In 2006, the Trust issued the "Presidio Trust Procedures Related to Claims of Workplace Discrimination," which created a "framework for adjudicating complaints of discrimination where issues arise." (SAC, Exh. 2 at 1.) The Presidio Trust Procedures required that claims of discrimination or retaliation that related to the appointment, compensation, or termination of employees be processed in accordance with the Presidio Trust Procedures, and could not be raised to the EEOC. (*Id.* at 2.)

Plaintiff worked at the Presidio's Office of the Executive Director from December 2, 2013 to August 2, 2014. (SAC ¶¶ 32-34.) During her employment Plaintiff had a medical condition affecting her uterus. (SAC ¶ 35.) In May 2014, Plaintiff had a medical problem requiring treatment, requiring her to go to her direct supervisor, Joshua Steinberger. (SAC 37-7, 39.) After Plaintiff explained her problem, Steinberger responded, "It is what it is" in a cold and impersonal tone. (SAC ¶¶ 39-2, 39-4-39-5.) Although Steinberger had previously been friendly to Plaintiff, following the meeting "he looked at Jordan like she had some type of terrible disease" and "never smiled at her anymore." (SAC ¶¶ 39-9-39-12.) Steinberger excluded Plaintiff from a departmental quarterly retreat, despite having invited her before. (SAC ¶¶ 40-1-40-3.) Plaintiff also alleges that when a co-worker asked Steinberger about his weekend, he walked over to where Plaintiff was sitting and talked about how he had "cleaned out his underwear drawer" and bought new underwear, and "how great it felt wearing clean underwear." (SAC ¶¶ 41-2-41-5.) He then

2

looked at Plaintiff and winked; Plaintiff "felt the clear implication was she was wearing dirty, soiled underwear due to her problem," and that he was trying to demean her in front of the group. (SAC ¶¶ 41-6-41-8.) Plaintiff then went to the restroom and cried, humiliated. (SAC ¶ 41-10.)

On July 2, 2014, Plaintiff was informed by Steinberger and Human Resources Director Bart Ferrell that it was her last day of employment. (SAC ¶ 42-5.) Plaintiff was shocked, but when she asked why, Ferrell told her that no reason had to be given because she was an at-will employment. (SAC ¶¶ 42-6-42-8.) Ferrell gave her a document which stated that the reason for termination was due to "lack of funds." (SAC ¶¶ 42-12-42-14.) On November 14, 2014, Plaintiff noticed that the Presidio had re-advertised her prior position. (SAC ¶¶ 44-1, 44-5.)

Plaintiff filed a claim with the EEOC and the California Department of Fair Employment and Housing. (SAC ¶¶ 46-1-46-2.) Both agencies informed her that her claim was outside their jurisdiction because she was a federal employee. (SAC ¶¶ 46-4-46-5.) Plaintiff was advised to visit the Presidio Trust's EEO Counselor. (SAC ¶ 46-6.) When Plaintiff contacted the Presidio, they were initially unable to provide the name and contact information of the EEOC Counselor. (SAC ¶ 50.) The Presidio later identified Keena Ashley as the EEOC counselor. (SAC ¶ 51.) On June 5, 2015, Plaintiff completed the intake questionnaire with Ashley, and was given the right to file a formal complaint. (SAC ¶¶ 52-53.) Plaintiff filed her formal complaint on July 10, 2015, and Ashley confirmed receipt on July 16, 2015. (SAC ¶¶ 54, 54-2.)

On August 11, 2015, Ashley again confirmed receipt of Plaintiff's complaint, and provided the Presidio Trust Procedures. (SAC ¶¶ 45-6, 54-3.) Plaintiff alleges that this was the first time she was made aware of the Presidio Trust Procedures, as these procedures are not available online and were never provided to her when she was hired, during her employment, or when she was terminated. (SAC ¶¶ 45-4-45-11.)

**B. Procedural History**

On April 21, 2016, Plaintiff filed the instant suit, seeking declaratory relief on whether her discrimination claims are subject to the Presidio Trust Procedures, or whether her claims enjoy rights under Title VII, the ADEA, and EEOC regulations. (Compl., Dkt. No. 1.) On September 30, 2016, Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). On January 30,

3

United States District Court
Northern District of California

2017, the Court granted Defendants' motion to dismiss, finding that Plaintiff had: (1) failed to identify an express waiver of sovereign immunity applicable to her claim, (2) failed to establish subject matter jurisdiction, and (3) failed to demonstrate that she suffered actual injury. (Dkt. No. 49 at 7-9.) The Court gave Plaintiff leave to file an amended complaint adding APA claims. (*Id.* at 11.)

On March 1, 2017, Plaintiff filed her first amended complaint, asserting two causes of action for declaratory relief and injunctive relief. (First Amended Compl. ("FAC"), Dkt. No. 51.) Defendants again filed a motion to dismiss. (Dkt. No. 63.) On July 5, 2017, the Court granted Defendants' motion to dismiss, explaining that declaratory relief and injunctive relief "are not independent causes of action, but remedies." (Dkt. No. 74 at 1 (internal quotation omitted).) The Court noted that in her opposition, Plaintiff suggested that she was actually bringing an APA claim, but explained that Plaintiff's complaint did not actually include an APA cause of action. (*Id.* at 2.) Thus, if Plaintiff intended to bring an APA claim, "she must explicitly plead such a claim in her amended complaint." (*Id.*) The Court further found that "[t]he APA claim should, at the very least, specifically identify the exact agency actions being challenged, whether it is the promulgation of the Presidio Trust Procedures . . . , the alleged 'interagency agreement' between the Defendants, or some other alleged final action." (*Id.*) The Court also observed that if Plaintiff was to bring an APA claim, there was a question of whether the agency discretion exception applied. (*Id.*)

On August 11, 2017, Plaintiff filed her second amended complaint, asserting a single cause of action under the APA. (SAC ¶¶ 65-79.) On August 25, 2017, Defendants filed a motion to dismiss the second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6). On September 25, 2017, Plaintiff filed her opposition to Defendants' motion to dismiss. (Plf.'s Opp'n, Dkt. No. 85.) On October 11, 2017, Defendants filed their reply. (Defs.' Reply, Dkt. No. 88.)

## II.  LEGAL STANDARD

### A.  Motion to Dismiss under Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion tests whether a complaint

4

alleges grounds for federal subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Motion to Dismiss under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th

Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

**III. DISCUSSION**

Defendants raise three grounds for dismissal in this case. First, Defendants argue that the Court lacks subject matter jurisdiction because Plaintiff had not identified an injury in fact, and therefore failed to establish standing. (Defs.' Mot. at 11.) Second, Defendants assert that Plaintiff fails to adequately state an APA claim because she does not identify a final agency action. (*Id.* at 16.) Further, Defendants contend that Plaintiff fails to demonstrate that the challenged action is not subject to the agency discretion exception. (*Id.* at 17.) Finally, Defendants argue that on the merits, a plain reading of the Presidio Trust Act does not support Plaintiff's interpretation of what is required. (*Id.* at 17-18.) The Court concludes that Plaintiff has failed to adequately allege an APA claim, and therefore does not address the standing and merits questions.

**A. Pleading Deficiencies**

As an initial matter, Plaintiff's complaint fails to provide fair notice as to what specific final agency action she is challenging. Instead, Plaintiff's APA cause of action simply integrates all prior paragraphs, and states generally that "Defendants have each taken the above-described actions" and that those "above-described actions are in contravention of the laws and regulations of the United States," without specifying which actions are the subject of the APA claim. (SAC ¶¶ 68-69.) The prior paragraphs, in turn, focus on two potential actions: Deputy Attorney General Francisco's opinion regarding the interagency dispute between the EEOC and the Trust, as well as

the Trust's issuance of the Presidio Trust Procedures. (SAC ¶¶ 5-11.) It is only in her opposition that Plaintiff makes clear that she is challenging the issuance of the Presidio Trust Procedures. (Plf.'s Opp'n at 2 (stating that the case is "a collateral challenge to the Presidio's ultra vires assertion of rule-making authority to issue final and binding regulations that, *inter alia*, prohibit access to EEOC regulations").) A plain reading of the complaint, however, strongly suggests that Plaintiff is actually challenging the *Francisco* opinion, not the issuance of the Presidio Trust Procedures, based on Plaintiff's allegation that she was harmed by the opinion, that "[t]his case directly challenges Francisco's conclusions that now bind the EEOC from asserting jurisdiction over most all [sic] termination claims against the Trust," that "Francisco's directive ignores our civil rights statutes and regulations, violates clear rules governing statutory construction . . . , and that it otherwise runs counter to our national values, and that "Francisco's directive cannot be sustained." (SAC ¶¶ 5, 9, 10.) It is only with the opposition's clarification that the basis of Plaintiff's APA claim becomes clear. The complaint's lack of clarity fails to comply with federal pleading standards requiring "fair notice of what the claim is and the ground upon which it rests," as it forces Defendants to guess as to which action is the subject of the APA claim. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[1] Dismissal of Plaintiff's complaint is warranted on this ground alone.

Moreover, to the extent that Plaintiff is challenging only the issuance of the Presidio Trust Procedures, Plaintiff fails to allege any cause of action against Defendants EEOC and Yang. (*See* Defs.' Reply at 2 n.4.) Plaintiff alleges no facts demonstrating that either Defendant is responsible for the promulgation of the Presidio Trust Procedures. Instead, at the hearing, Plaintiff argued that the Defendants had an "apparent inter-agency agreement," evidenced by the instant lawsuit, as Defendants were being represented by the same counsel and relying on the same briefing. In other words, Plaintiff appeared to assert that this case could be brought against Defendants EEOC and Yang based on actions taken by Defendants EEOC and Yang in defending the same suit. Plaintiff

---

[1] The failure to specifically identify the exact agency action being challenged also contravenes the Court's order dismissing Plaintiff's first amended complaint. (*See* Dkt. No. 74 at 2.)

points to no authority suggesting that conduct occurring during a lawsuit could form the basis of liability in that same lawsuit. Moreover, even if Plaintiff was correct that Defendants EEOC's and Yang's conduct in this suit evidence support for the Presidio Trust Procedures, this still does not demonstrate that Defendants EEOC and Yang had any involvement in the *issuance* of the Presidio Trust Procedures. The Court therefore dismisses Plaintiff's APA claim against these two Defendants.

### B. Lack of APA Claim

Even assuming that Plaintiff's APA claim provides adequate notice, the Court finds that the APA claim fails.[2] In general, the APA allows a plaintiff "'adversely affected or aggrieved by agency action to obtain judicial review thereof, so long as the decision challenged represents a final agency action for which there is no other adequate remedy in a court." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (internal quotations omitted). When reviewing agency action under the APA, the court "will reverse the agency action only if the action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2004) (citing 5 U.S.C. § 706(2); footnote omitted).

In determining whether an APA claim may be brought, the Court "begin[s] with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). Not all agency actions, however, are subject to judicial review; the APA "limits application of the entire APA to situations in which judicial review is not precluded by the statute, *see* § 701(a)(1), and the agency action is not committed to agency discretion by law, *see* § 701(a)(2)." *Webster*, 486 U.S. at 599. The latter agency discretion exception "applies in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* Thus, "even when Congress has not affirmatively precluded judicial oversight, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

---

[2] Although an "argument in opposition cannot cure a defect in the pleading," the Court finds it more efficient to consider the propriety of Plaintiff's APA claim challenging the issuance of the Presidio Trust Procedures, rather than require another round of pleading. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015).

8

discretion." *Id.* at 599-600.

#### i. Promulgation of the Presidio Trust Procedures

First, Plaintiff appears to challenge whether Defendant Presidio Trust had any authority to issue the Presidio Trust Procedures, regardless of their content. Plaintiff does not explain why Defendant Presidio Trust lacks any authority to issue procedures, and such an assertion is contrary to the clear terms of the Presidio Trust Act. Again, Section 103(c)(7) specifically gives Defendant Presidio Trust authority to appoint, fix the compensation and duties of, and terminate the services of employees. Moreover, Section 103(c)(8) gives the Trust "all necessary and proper powers for the exercise of the authorities vested in it," which presumably would include the ability to issue rules and procedures such as the Presidio Trust Procedures. In any case, the Court is not required to presume that Section 103(c)(8) gives Defendant Presidio Trust the ability to issue rules because Section 104(j) specifically permits Defendant Presidio Trust to "adopt, amend, repeal, and enforce bylaws, rules and regulations governing the manner in which its business may be conducted and the powers vested in it may be exercised . . . ." This is a clear grant of authority to issue the Presidio Trust Procedures, and Plaintiff points to no authority that suggests otherwise.

To the extent Plaintiff relies on *Newman v. Rosenblatt*, this case is unpersuasive. As an initial matter, *Newman* is not binding on the Court. Moreover, *Newman* did not find that Defendant Presidio Trust lacked authority to issue its own policies and procedures for its employees. Instead, *Newman* concluded that Defendant Presidio Trust was subject to certain laws, such as the ADEA and Title VII. EEOC DOC 01A24736, 2003 WL 1624696, at *4 (Mar. 18, 2003). This is a distinct finding from whether Defendant Presidio Trust could issue policies and procedures, which, as discussed above, the Presidio Trust Act clearly permits Defendant Presidio Trust to do. The Court therefore finds that to the extent Plaintiff challenges Defendant Presidio Trust's ability to issue rules and regulations such as the Presidio Trust Procedures, Plaintiff has failed to state a claim.

#### ii. Content of the Presidio Trust Procedures

Second, Plaintiff appears to challenge the content of the Presidio Trust Procedures, namely the conclusion that employee claims of discrimination are not subject to the EEOC process, but

9

are instead subject to the exclusive jurisdiction of Defendant Presidio Trust. (*See* Plf.'s Opp'n at 3.) The Court finds that Plaintiff's challenge to the substance of the Presidio Trust Procedures is precluded by the APA's agency discretion exception.

In *Webster*, the Supreme Court examined § 102(c) of the National Security Act ("NSA"), which stated in relevant part: "Notwithstanding . . . the provisions of any other law, the Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States . . . ." National Security Act of 1947 ("NSA"), ch. 343, § 102(c), 61 Stat. 495, 498. The Supreme Court found that:

> § 102(c) allows termination of an Agency employee whenever the Director "shall *deem* such termination necessary or advisable in the interests of the United States" (emphasis added), not simply when the dismissal *is* necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review. Short of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged employee was inimical to those interests, we see no basis on which a reviewing court could properly assess an Agency termination decision.

*Webster*, 486 U.S. at 600. The Supreme Court also found that the overall structure of the NSA strongly suggested that implementation of § 102(c) was committed to agency discretion by law, explaining that the NSA generally expressed an overriding need for ensuring integrity in the Agency. *Id.* at 601. Thus, the Supreme Court concluded that "the language and structure of § 102(c) indicate that Congress meant to commit individual employee charges to the Director's discretion, and that § 701(a)(2) accordingly precludes judicial review of these decisions under the APA." *Id.*

In *Conyers v. Rossides*, the Second Circuit concluded that the agency discretion exception applied to § 111(d) of the Aviation and Transportation Security Act ("ATSA"). 558 F.3d 137, 149 (2d Cir. 2009). There, the relevant provision stated:

> Notwithstanding any other provision of law, the [Administrator] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the [Administrator] determines to be necessary to carry out the screening functions

10

> [required by the Act]. The [Administrator] shall establish levels of
> compensation and other benefits for individuals so employed.

49 U.S.C. § 44935. First, the Second Circuit found that "the phrase '[n]otwithstanding any other provision of law' is one that clearly signals the drafter's intent that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Conyers*, 558 F.3d at 145 (internal quotation omitted). Second, the court found that § 111(d) "speaks broadly of the Administrator's authority to 'employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment . . . ." *Id.* "This nearly comprehensive list of employment-related decisions, along with Section 111(d)'s final sentence regarding the Administrator's establishment of 'levels of compensation and other benefits,'" all concerned actions related to personnel management. *Id.* at 145-46. The Second Circuit thus found that this language "clearly signals Congress's intent to grant the [Administrator] authority to design a personnel management system for airport security screeners, to include or not include at the [Administrator's] discretion provisions of other federal personnel laws . . . ." *Id.* at 146. Finally, the Second Circuit found that its conclusion regarding agency discretion was confirmed by legislative history, as an amendment to the initial language "significantly broadened the reach of the provision to authorize the employment, suspension, and termination of airport passenger security screeners without regard to the provisions of title 5, United States Code, otherwise applicable to such employees." *Id.* at 147 (internal quotation omitted).

Like the statutes in *Webster* and *Conyers*, the language of § 103(c)(7) of the Trust Act strongly suggests that Congress intended to give the Trust broad discretion in personnel decisions. Like § 102(c) of the NSA, § 103(c)(7) authorizes the Trust to appoint and fix compensation and duties, and terminate services "as it *deems necessary*" without regard to federal laws related to the appointment, compensation, or termination of Federal employees. The "deems necessary" language was significant to the Supreme Court, as it does not create a specific standard or create a particular requirement, but instead leaves the issue to the discretion of the decision-maker, in this case--the Trust. *Compare with Webster*, 486 U.S. at 600. Section 103(c)(7) also covers a broad scope, leaving a wide variety of employment decisions -- appointment, compensation, duties, and termination -- to the decision-maker, while using "Notwithstanding any other provision of law"

11

language to override conflicting provisions of law. *See Drakes Bay Oyster Co. v. Jewell*, 729 F.3d 967, 977 (9th Cir. 2013) ("As a general matter, 'notwithstanding' clauses nullify *conflicting* provisions of law"). The lack of standards and the wide scope of this section clearly indicate that this section's implementation is "committed to agency discretion by law."

The statutory history also suggests a commitment to agency discretion. Section 103(c)(7) was amended to include the "Notwithstanding any other provision of law" language, as well as expanding its scope to include termination. (Defs.' Mot., Exh. B at 5.) The amendments also included the removal of narrowing language as to what laws the Trust could act without regard to, eliminating specifically identified provisions and instead stating more generally "or other laws related to the appointment, compensation or termination of Federal employees." (*Id.*) This broadening of the scope of § 103(c)(7) confirms the Court's interpretation of the language to be committing such decisions to agency discretion. *Compare with Conyers*, 558 F.3d at 147. Thus, the Court concludes that the promulgation of the Presidio Trust Procedures is an act that falls within the discretion of the Trust, precluding judicial review under the APA.

Notably, Plaintiff provides no significant response to the applicability of the agency discretion exception, even though the issue was identified by the Court in its order dismissing the first amended complaint. (*See* Dkt. No. 74 at 2.) Instead, Plaintiff appears to rely on *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002). (Plf.'s Opp'n at 3.) The section of *Neighbors of Cuddy Mountain* that Plaintiff cites to, however, did not address the agency discretion exception; instead, it was concerned with what qualified as a *final agency decision*.[3] 303 F.3d at 1067 (explaining that the court will only intervene in the administration of laws when

---

[3] Indeed, *Neighbors of Cuddy Mountain* did not address the agency discretion exception at all. To the extent *Neighbors* discussed discretion, it was in the context of the National Environmental Policy Act ("NEPA"), a procedural statute that does not mandate particular results but requires certain processes to ensure that an agency exercises its discretion in a manner that is "truly informed." 303 F.3d at 1071. The agency discretion referenced in NEPA is distinct from the agency discretion exception in the APA.

Likewise, Plaintiff's citations to *Columbia Broadcasting System v. United States*, 316 U.S. 407 (1942) and *Hale v. Norton*, 437 F.3d (9th Cir. 2006), are irrelevant to the agency discretion exception because neither case addressed discretion in any form.
United States District Court / Northern District of California

"a specific 'final agency action' has an actual or immediately threatened effect. Such an intervention may ultimately have the effect of requiring a regulation, a series of regulations, or even a whole 'program' to be revised by the agency in order to avoid the unlawful result that the court discerns"). Plaintiff provides no explanation for how this section of *Neighbors of Cuddy Mountain* is relevant to the instant case, and does not analyze the language or legislative history of § 103(c)(7) to explain why the agency discretion exception would not apply. At the hearing, Plaintiff again relied heavily on *Newman*; as discussed above, however, *Newman* is not binding on the Court. Moreover, *Newman* requires the Court to consider the content of the Presidio Trust Procedures; the Court cannot get to this issue, however, if the agency discretion exception applies. In short, Plaintiff's reliance on *Newman* does not affect the Court's finding that the substance of the Presidio Trust Procedures is committed to the discretion of Defendant Presidio Trust.

Because the agency discretion exception applies to preclude judicial review under the APA, the Court GRANTS Defendants' motion to dismiss. Further, because judicial review is precluded, further amendment would be futile. The dismissal is therefore with prejudice.[4]

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss the complaint with prejudice.

IT IS SO ORDERED.

Dated: November 15, 2017

KANDIS A. WESTMORE
United States Magistrate Judge

---

[4] This suit is limited to a challenge of the administrative procedures by which Plaintiff can seek relief from the agency, *i.e.*, whether Defendant Presidio Trust can promulgate the procedures that it has. This does not address the merits of Plaintiff's discrimination claim, which is whether she was unlawfully terminated based on her age and/or gender. Plaintiff may not be precluded from bringing a suit based on what she alleges happened to her, or from completing the process prescribed by the Presidio Trust Procedures and challenging those results should the decision be unfavorable. Such a suit would also appear to better address the standing issues that Defendants assert exists in this suit.